(38 South. 561.)

No. 15,395.

BANK OF PATTERSON v. URBAN CO.,
Limited, et al.*

(March 27, 1905.)

ATTACHMENT—GROUNDS—UNFAIR PREFERENCE.

An intent to give "an unfair preference" to one or more creditors is one of the statutory grounds for an attachment. Code Prac. art. 240, subd. 4. Such a preference is a "constructive fraud," and is prohibited, whether operated through the machinery of the courts or otherwise. There is an "unfair preference" where the creditor knew or had good reasons to know that the debtor was insolvent and the transaction gives the creditor any advantage over other creditors.

(Syllabus by the Court.)

*Rehearing denied May 22, 1905.

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Albert Campbell Allen, Judge.

Action by the Bank of Patterson against the Urban Company, Limited, and others. Judgment for defendants, and plaintiff appeals. Reversed.

O'Niell & Alpha, for appellant. Foster, Milling, Godchaux & Sanders, for appellees.

LAND, J. Plaintiff sued the defendant company on its mortgage note for $2,000, with interest and attorney fees, and at the same time sued out writs of attachment on the usual grounds, and assailed as fraudulent a certain judgment obtained by one M. Bell against said company, and a seizure of furniture and other property made thereunder, and prayed that the judgment be decreed null and void, and the seizure be vacated and set aside.

A motion to dissolve the attachment on the ground that the allegations on which the writ issued were false was sustained, with $150 special damages for attorney fees. Plaintiff has appealed.

The Urban Company, Limited, was organized for the purpose of conducting a hotel business in the town of Franklin. A suitable building was purchased and furnished. The venture proved a failure. In March, 1903, the president wrote to the Bank of Patterson that the company was not able to pay the note for $2,000 held by that institution, nor the Mollie Walker notes for $5,000, nor the interest on either of them. Suit had been filed on the latter notes, which were secured by first mortgage on the hotel building and grounds. The note held by the bank was secured by a second mortgage on the same property. The president, in his letter of March 17, 1903, suggested that the bank take up the Walker notes and hold them in order to save attorney fees. The bank declined to take up the Walker notes.

On April 10, 1904, the board of directors of the Urban Company met and authorized the president to wind up the business of the corporation as quickly as possible, and to call a meeting of the stockholders for the purpose of liquidating its affairs. The stockholders were notified to meet on April 17, 1904, for the purpose of liquidating the business of the company. This meeting failed for want of a quorum.

On April 22, 1904, the Urban Company was indebted as follows: On the Walker notes, with accrued interest and attorney fees, about $6,200; on note held by Patterson Bank, with interest, about $2,200; on open account to M. Bell, $277.19; on open account to Hanson Lumber Company, $331.68; to its president, for cash advanced, $436.29; and several other small amounts unnecessary to mention.

The Patterson Bank, through its bookkeeper, was a stockholder in the Urban Company in the amount of $300, and M. Bell was also a stockholder of the same corporation. The assets of the corporation consisted of the hotel building and grounds, with the furniture and appurtenances. The latter cost originally about $2,500.

The suit on the Walker notes had been pending since the previous September. The company being unable to pay even the interest on the notes, and having failed in its efforts to induce the Bank of Patterson to take up and hold the paper, the prosecution of the foreclosure suit became inevitable. The Urban Company was insolvent, in fact, and the condition of its affairs demanded the appointment of a receiver in the interest of all concerned. The president, however, undertook to wind up the business of the corporation, and to distribute its assets in the following manner: He transferred his own claim to M. Bell, and induced him to purchase the claim of the Hanson Lumber Company. The president had personally guarantied the payment of the claims of Bell and

of the lumber company. This guaranty was not in writing, but was recognized as binding by the parties. It was understood that Bell should sue on the three claims, obtain judgment, and seize and sell the furniture.

On April 22, 1904, the president, individually, addressed the following communication to M. Bell: "If you will pay the account of the Albert Hanson Lumber Company, that is due by the Urban Company Limited, and file suit on it with the claim due you by the same company, secure judgment and seize the furniture and effects of the Urban Company, Limited, I will personally bind myself to bid enough to pay you in full for the entire indebtedness."

Suit was filed the same day, the president accepting service and waiving citation. Four days later the president filed an answer, and on the same day the case was tried and judgment rendered in favor of Bell. On April 29th a writ of fieri facias issued, and the furniture and other effects were seized. Bell personally had nothing to do with these proceedings. The president was an attorney at law, and the petition was written from his dictation. He procured the signature of a certain law firm to the petition as attorneys for Mr. Bell. The member signing the firm name did so as an act of courtesy and as a matter of accommodation. The president filed the answer in his official capacity, and was one of the witnesses to prove up the claim sued on.

It is not shown who ordered the issuing of the writ of fieri facias, but the president admits that he wrote the notices of seizure for service on himself. The suit was filed on April 22d, and the seizure was made on the 29th of the same month.

It is perfectly plain from this statement of facts that the suit was instigated by the president of the company, conducted by him, and by his waivers, pleading, and consent culminated in a judgment and execution within one week after its institution.

The president obtained from the attorney of Davis, representing the Walker notes, an agreement that the first seizure of the furniture should be made under the Bell judgment. It appears that in the Davis suit the service of citation was defective, and, to cure the defect, the president of the Urban Company voluntarily filed an answer.

It is apparent that M. Bell was used by the president as an instrument, and did not act on his own initiative to secure the payment of his own claim in the regular course of judicial proceedings. Bell was a stockholder, and attended the meeting called by the president, but which was not held for want of a quorum.

The president on that occasion told Bell what had passed at the directors' meeting, and Bell said "that he would wind up the thing as quick as possible and get rid of it." Bell, therefore, must have known of the insolvent condition of the corporation. He knew that the Bank of Patterson held a second mortgage, but was advised by the president that the bank, having a mortgage, "could not attach the other stuff." Both Bell and the president knew that if the furniture was seized and sold to pay their claims, and the real estate did not bring more than enough to pay the Walker mortgage notes, the Bank of Patterson would receive nothing on the note for $2,000, with interest, held by that institution.

This real estate was seized under execution by Davis, appraised at $7,100, and sold for less than $5,000. The purchaser had acquired the Davis judgment for $5,000, or for some $1,200 less than the amount of the mortgage, with interest and attorney fees.

In the case of Minge & Co. v. Barbre, 51 La. Ann. 1290, 26 South. 182, we said:

"It may, with truth, be said that for a debtor to give a preference to one creditor over another is not in itself wrong, and is not a fraud in a moral sense, since it is permitted in many of the states of the Union; but that does not help the matter so far as this case is concerned. With us, the property of the debtor is the com-

mon pledge of his creditors, and any arrangement whatever, through the machinery of the courts or otherwise, whereby the debtor unites with one creditor to give such creditor an advantage over others, is in violation of the prohibitions of the law, and will not be permitted to stand."

It is strenuously argued by counsel for defendants that the evidence shows no intent to defraud, and therefore the attachment was properly dissolved. An intent to give "an unfair preference" is one of the statutory grounds for an attachment. Code Prac. art. 240, subd. 4.

The giving of such preference is a "constructive fraud," where the creditor knew that the debtor was in insolvent circumstances and the transaction gives the creditor any advantage over other creditors. Civ. Code, arts. 1983, 1984.

We think that defendants knew that the Urban Company was insolvent, and, beyond question, the arrangement between them, operated through the machinery of the court, gave them a privilege on the furniture seized, and thereby an advantage over other creditors. The suit was the result of an understanding between the parties, and was in the interest of the president of the company in his individual capacity. The suit would not have been brought had he not instigated it. A judgment and seizure, obtained under the circumstances of this case, can have no greater effect than the voluntary transfer of property by an insolvent to preferred creditors.

There is some contention as to the value of the real estate. It was appraised at $7,100, and sold for $5,000. The first mortgagee sold his claim, amounting to $6,200, for $5,000, and no one could be found who was willing to bid more than the latter sum for the property. It was manifest that the second mortgage of the Bank of Patterson for over $2,-000 was worth less, or, at least, inadequately secured. The insolvency of the Urban Company is shown by the action of its board of directors in ordering the liquidation of its

affairs as speedily as possible. Plaintiff in the seizure was fully advised of the situation.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and it is now ordered that the motion to dissolve the attachment herein be overruled, that the same be reinstated in full force and effect, and that this cause be remanded for further proceedings according to law; appellees to pay costs of appeal.