No. 3719

First Circuit Appeal

---

MRS. EDNA INNIS MONTGOMERY v. NEW ROADS OIL MILL AND MANU-FACTURING CO., LTD.

BANK OF NEW ROADS, Intervenor and Third Opponent

---

(February 18, 1925, Opinion and Decree)
(May 5, 1925, Rehearing Refused)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Attachment—Par. 63, 64.**
The plaintiff, in an attachment suit, having filed a new bond within two days after the defendant filed its answer in which objection was made to the first bond has complied with Section 3 of Act No. 112 of 1916.

2. **Louisiana Digest—Fraud—Par. 5.**
Where an oil mill purchased cottonseed, cottonseed cake, meal, etc., clearly intending to pay for same, but its financial affairs were so involved that further pledges had to be made at a later date to a bank in order to secure sufficient credit with which to operate its business, held that, inasmuch as co-operation was necessary between the bank and the oil mill, bad faith and fraudulent intent should not be imputed to these transactions.

3. **Louisiana Digest—Attachment—Par. 95, 97, 162.**
Where, under Article 240, Paragraphs 4, 5, of the Code of Practice, an attachment is made, if the plaintiff creditor cannot prove bad faith and fraudulent intent, the attachment will be dissolved with attorney's fees as damages.

Appeal from Twenty-first Judicial District, Parish of Pointe Coupee. Hon. William C. Carruth, Judge.

This is a suit coupled with a writ of attachment by which the plaintiff attempted to enforce the collection of a debt due for cottonseed, etc., sold and delivered. There was intervention filed by a bank, the owner of a pledge against the material seized in the attachment.

There was judgment recognizing the debt by dissolving the attachment with attorney's fees as damages.

Plaintiff appealed.

Judgment affirmed.

M. T. Hewes, of New Roads, attorney for plaintiff, appellant.

Bouanchaud & Kearney, of New Roads, attorneys for defendant, appellee.

Albin A. Provosty, of New Roads, attorney for intervenor, appellee.

ELLIOTT, J. The plaintiff, Mrs. Edna Innis Montgomery, wife of Thomas W. Montgomery, and the said T. W. Montgomery to authorize and assist her, alleges that the New Roads Oil Mill and Manu-facturing Co., Ltd., is indebted unto her in the sum of $978.19 with interest on ac-

count of cottonseed which she had sold and delivered to said oil mill; that a statement of account showing the indebtedness was annexed to and made part of her petition.

That said oil mill had made the Bank of New Roads a preferred creditor to her injury and prejudice.

That the cottonseed which she had sold to said mill had been manufactured into cottonseed meal, oil, and other valuable products and was being sold and the proceeds paid to said bank to her loss and injury.

That said oil mill had mortgaged, assigned or disposed of, or was about to mortgage, assign or dispose of, its property, rights or credits or some part thereof, with intent to defraud its creditors or give an unfair preference to some of them, and had converted, or was about to convert, its property into money or evidence of debt with intent to place same beyond the reach of its creditors.

She prayed for the issuance of a writ of attachment against the oil mill, which she obtained, and cottonseed, cottonseed cake, meal, oil, hulls, linters, mote and grabot cotton, in value largely in excess of the amount due her was seized.

The Bank of New Roads, alleging itself to be a creditor of the New Roads Oil Mill and Manufacturing Co., Ltd., in a large amount for money loaned to enable said mill to carry on its operations and buy cottonseed and crush and manufacture it into oil, meal, cake, hulls, motes, linters and grabot cotton. That said loans were secured by acts of pledge, whereby the cottonseed and cottonseed products manufactured therefrom were pledged to said bank under agreements to that effect, annexed to and made part of its petition, etc.; that all the cottonseed and cottonseed products that had been seized were subject to and covered by its said pledges and agreements, etc. It intervened in the suit, opposed plaintiff's demand prayed for recognition of its pledges, for the dissolution of the attachment and release of the property, etc.

The defendant oil mill excepted to plaintiff's petition on the ground that it disclosed no right or cause of action, which was overruled.

It then answered her demand and in its answer denies that the statement of account annexed to her petition evidences indebtedness to her; denies all her allegations on which the attachment was sued out; alleged that the surety on her attachment bond was not a resident of the parish and that the bond was illegal on said account; that the property attached had been pledged to the Bank of New Roads, etc.; prayed for the rejection of plaintiff's demand for the dissolution of the attachment; recognition of the pledges and agreements it had entered into with the Bank of New Roads, that plaintiff be required to pay attorney's fees, etc.

Defendant does not appear to have answered the Bank of New Roads, but in answering the demand of the plaintiff all the allegations in the petition of the Bank of New Roads are admitted; therefore none was necessary. The District Judge, after trial, for written reasons, rendered judgment in favor of the plaintiff and against the defendant for the amount claimed in her petition, but against the plaintiff and in favor of the defendant and intervenor and third opponent dissolving the attachment with $150 attorney's fees and sustaining the intervention, etc.

The plaintiff appealed.

The statement of account annexed to plaintiff's petition is made out in favor of "Latanche Gin Co.". Plaintiff's petition does not in express terms say that Latanche Gin Co. is merely the name of her gin and the business of buying and selling cottonseed which she carried on, but she

avers that defendant rendered her the statement in question, that it evidences indebtedness due her on account of seed for which she claims payment; that defendant promised to pay her for same, etc.

These allegations authorized the reception of parol evidence that plaintiff was in truth and in fact the vendor in the matter of selling the seed in question and defendant the consequent debtor to her on said account. The evidence establishes that such was the fact and that she is a creditor of the mill for the amount claimed.

The surety on plaintiff's first attachment bond was not a resident of the parish, so plaintiff gave another bond as required by the law, Act 112 of 1916. Defendant claims in argument that this new bond was not filed within the time required by Section 3 of said act.

We have not found in the record an objection of this kind; but the record shows that defendant filed its answer in which objection is made to the first bond on March 22, 1924, and on March 24, 1924, the new bond was filed. It was therefore filed in time.

As above stated, the evidence is in favor of the plaintiff as to her demand against the defendant for $978.19 on account of cottonseed.

In regard to the attachment plaintiff alleges and defendant admits in its answer that defendant's capital stock is $100,000 and its total assessed value is but $27,485. The evidence shows that uncancelled mortgages appear on record against defendant in amount exceeding $120,000; that defendant is deeply involved in debt and so badly embarrassed financially and so tied up with the Bank of New Roads by means of pledges and agreements that no other bank could be expected to lend it any assistance; that it cannot operate without

assistance and therefore cannot operate unless the Bank of New Roads chooses to finance for the purpose; that it is unable to pay its debts at present; that the contracts of pledge and agreements entered into between the oil mill and Bank of New Roads were all, except the two last, entered into while it was paying all demands made on it; but the two last pledges and agreements were entered into after the last sale of seed, which led to the institution of this suit. The above facts are impressive, but after consideration of all the facts and circumstances, we are not satisfied that the pledges and agreements entered into between defendant and the Bank of New Roads were entered into on defendant's part in bad faith and with intent to defraud the plaintiff, or to give an unfair preference over her, or that same constituted a conversion of defendant's property or some part thereof, with intent to place same beyond plaintiff's reach in the sense and meaning of the law, C. P., Article 240, Paragraphs 4 and 5.

It is the intent and bad faith of the debtor in making contracts of the kind we have before us in this case which governs if the creditor attaches. Winter vs. Davis, 48 La. Ann. 260, p. 261, 19 South. 263; Bank vs. Martin, 52 La. Ann. 1628, p. 1629, 28 South. 130. As well as the record permits us to say, it does not appear that the bank's advances of money to the defendant could have been dispensed with and the defendant's plant kept going; and the loans were so large that the bank was justified in exacting every possible and available security.

The record shows that the bank loaned defendant money to operate and buy cottonseed for the purpose. It could not operate without buying cottonseed and money could not be obtained for the purpose except, so far as we can gather from the record, by borrowing from the Bank of

New Roads and to enable it to borrow security had to be given as required by the bank. The agreements entered into between the bank and the defendant, to the effect that defendant was to manufacture the cottonseed into cottonseed products, with authority from the bank, sell the products, the proceeds to be subject to the pledges and applied to the debts for which the seed had stood security, should not have greater effect, as indicating on the part of the oil mill, bad faith and intent to defraud the plaintiff, than should be given to the fact that the oil mill borrowed for the purposes above stated. The amount due the plaintiff is not for a sale of cottonseed in bulk, for which time was not agreed on, but is a balance due on account, which account shows two deliveries of seed, as we understand it, in the month of October, three in November, 1923, and one in January, 1924, and on which payments were made by the oil mill in nine or ten different payments on account, at different times and in different sums, the $978.19 sued for being the balance due. This dealing on account inclines us away from the idea that in executing pledges after the last delivery of seed that defendant intended thereby to defeat plaintiff of the balance due her on account of the purchase price. It seems more reasonable to believe from all the facts and circumstances that defendant intended at the time the cottonseed was delivered to pay for same, but without connivance or scheme on the part of the oil mill to bring it about the funds which it had arranged for with which to pay for seed had been exhausted at the time demand for payment was made.

In Dreyfous vs. Cade, 138 La. 298, 70 South. 231, the Supreme Court says (we quote part of the syllabus only):

"* * * but when there is no question

of insolvency or fraud, a purchaser of movable property on credit may sell it to a third person who knows he has not paid the price and the original vendor loses his privilege."

And in Pierson vs. Carmouche, Opposition of Max Barnett Furniture Co., 146 La. 798, 84 South. 59, the syllabus reads:

"A purchaser on credit of movable property may validly give it in pledge to a third person who knows that he has not paid the price, but is otherwise in good faith, so as to vest in the pledgee a right superior to that of the vendor whose privilege therefore ceases by reason of the property having passed out of the possession of the vendee."

These cases are cited as showing that bad faith and fraudulent intent, etc., should not be necessarily imputed to a vendee or pledgor who has sold or pledged movable property that he has not paid for without evidence showing that it was his purpose to defeat the vendor, for the reason that the law authorizes the vendee to sell or pledge, no matter whether he has paid for the property or not. Therefore, the fact that the oil mill executed the two last pledges after receiving the last delivery of cottonseed from plaintiff cannot be condemned for the act, when it does not appear that it was done for the purpose of defeating the purchase price. Co-operating agreements between pledgor and pledgee, some of them not essentially different from the agreements entered into between the oil mill and the Bank of New Roads, were considered by the Supreme Court of the United States in Casey vs. Cavaroc, 96 U. S. 467. The defeat of an unpaid vendor by the fad faith and fraudulent intent of the vendee was not a question in the case; yet the court recognized co-operation between pledgor and pledgee in certain cases as necessary and proper. Therefore, in those cases where co-operation is necessary and proper, as in the

case we now have in hand, bad faith and fraudulent intent, etc., should not be imputed to what the law permits as right and proper.

In her answer to the intervention of the bank the plaintiff avers that the pledges and agreements entered into between the oil mill and the bank are contrary to law and good morals, etc. We do not think so, except when the purpose is to defeat some right, which they have no right to do. We concluded for the reason above stated that the pledges and agreements above mentioned do not sustain the attachment sued out by the plaintiff and that the judgment dissolving the attachment must be affirmed.

As for the attorney's fees, we understand the entry in the note of evidence to mean that $150 attorney's fees is to follow the judgment if the attachment is dissolved.

It is therefore ordered, adjudged and decreed that the judgment appealed from herein be and the same is hereby affirmed.