JOHNSON, Judge.
The plaintiff, a resident of Jefferson Parish, sued the defendant, a resident of Orleans Parish, Louisiana, on a promissory note. A writ of attachment issued and real estate was attached. The defendant filed a motion for a rule nisi to dissolve the attachment. Upon the trial of the rule, the Civil District Court for the Parish of Orleans made the rule absolute and dissolved the writ, granting judgment in favor of defendant for attorney’s fees in the sum of $250.00. Plaintiff has appealed.
Plaintiff’s petition alleges that “Defendant is about to mortgage and dispose of defendant’s property with intent to avoid payment of his creditors and to give some creditors unfair preference over others *
Defendant’s motion suggests that the allegation on the strength of which the writ of attachment issued is false in its entirety and is known to plaintiff to be false. Defendant asks for attorney’s fees in the sum of $2,000.00.
The note attached to plaintiff’s petition was executed by defendant on November 3, 1958, and it is copied here in full, as follows :
“FOR VALUE RECEIVED,
“I promise to pay to the order of
“MILTON KESSLER
“Five Thousand, Five hundred ($5,500.-00) Dollars with interest at the rate of 6% per annum from date until paid.
“This note it to be liquidated by the application of one-half of the weekly collections from the coin operated machines on the premises, 763 South Rampart Street until all of the principal and interest have been paid.
“Should I cease voluntarily to operate the said business, or should my lease on the premises be terminated for cause, then in that event, the entire unpaid balance (principal and interest) shall become due and exigible.
*735 “Should this note be placed in the hands of an attorney for collection when delinquent, an additional sum of 15% of said principal and interest shall be due as attorney fees.”
The defendant operated a bar at 763 South Rampart Street in New Orleans. He got behind in his rent and had two judgments recorded against him, one in favor of the New Orleans Beverage Company for $528.00, and the other in favor of Public Finance Company for $350.00. Both judgment creditors had writs of execution issued and defendant’s business was seized. Plaintiff testified that defendant needed money for his business; that plaintiff talked to attorneys for the judgment creditors about the situation, and the attorney for Public Finance Company said he was going to investigate a piece of real estate owned by defendant with a view of seizing it, and the New Orleans Beverage Company agreed to take part payment if arrangement could be made for defendant to operate his bar. Under these conditions, plaintiff did not believe that defendant could stay in business because he could not take care of his bills. Plaintiff said defendant talked to him every day and defendant said he wanted to take care of the small bills and then work out something with plaintiff.. Plaintiff further said that he had the attachment issued because it was just a question of who gets there first and he did it to protect his rights. After repeated questioning by the Court and counsel, that is the sum and substance of all of the facts and reasons given by plaintiff for the issuance of the attachment. He frankly acknowledges that defendant never said anything about disposing of or mortgaging any property.
It is interesting to note that the original amount of the note was $5,500.00 and that the principal has been reduced since November 1958 to July 1961 to $2,979.00. Also, the note stipulates that should the defendant cease voluntarily to operate the said business or should defendant’s lease on the premises be terminated for cause, the unpaid balance of the note would become due and exigible. Plaintiff’s petition makes no allegation that either event has happened.
This suit was filed on July 18, 1961, and the writ issued on that day, but the attachment was not actually made until July 24, 1961. Defendant testified that he knew nothing about this suit until his wife saw a notice of it in the paper. He said he had been trying to raise money to stay in business; that business was slow and he was “sort of behind;” that he had been behind before and this was nothing strange; that he had always caught up again when he got behind and that’s what he was trying to do in this instance. He was asked if he did not intend to pay Mr. Jacques (attorney for Public Finance Company) and not pay Mr. Kessler. He answered that he did not think he had to pay Mr. Kessler all of the note at once because Kessler was getting one-half the proceeds of some coin machines, according to their agreement, and that plaintiff had given defendant to understand that if he could pay Mr. Jacques the seizure which Jacques had put against his business would be automatically removed, and when he made arrangements to do that he found this suit filed against him which he knew nothing about. Defendant said he had not thought of increasing the mortgage on his home because Mr. Katz, the holder of that mortgage had agreed to loan him $900.00 additional to pay off the judgment creditors. Getting rid of the seizure so .he could stay in business was all he was trying to do.
After plaintiff filed this suit, defendant and the attorney for Mr. Katz talked about increasing the mortgage but they could not do it then because of this attachment against his property. Defendant said he had never defaulted on the note held by plaintiff; that he had fully complied with his agreement with plaintiff and that plaintiff was getting one-half the proceeds of the machines every week', as the note required.
Apparently, there had been no talk about putting another mortgage on defend *736 ant’s real estate until after the writ issued. It is obvious that such discussion at that time could not have prompted the allegations of plaintiff’s petition. All the evidence, and we say that advisedly, tends to prove nothing more than the fact that defendant was in financial difficulties mainly because of two small judgments, and the seizures under those judgments against his business made it necessary for defendant to get $900.00 in order to lift the seizures if he was going to be able to keep his doors open. He made no secret of his plan to pay off the two judgment creditors. It would be unreasonable to say that the prior payment of privileged debts would be granting an unfair preference to the creditors holding such privilege. Those creditors already had a preference by virtue of their judgments and seizures.
 In order to form a legal basis for the issuance of an attachment there must be evidence of intent on the part of the defendant to defraud creditors, and that fraudulent intent must exist at the time the attachment issues. In this case there is not even the slightest appearance of such an unlawful intent. Bird v. Dawkins, 6 La.App. 244; Middleton v. ITowell, 6 La. App. 865. The burden to prove the grounds upon which the writ of attachment is issued is on the plaintiff. LSA-Code of Civil Procedure, Article 3506.
 There is not a word of evidence in this record tending even remotely to support plaintiff’s allegation. We are favorably impressed with defendant’s attitude and his efforts to get money to pay the two small preference creditors in order to enable defendant to lift the existing seizures and resume operation of his business so that this plaintiff could continue to receive the proceeds of coin machines, as he had been doing in accordance with the note stipulation. Certainly, the amount of half the proceeds of those machines had not been inconsequential. The reduction in the principal amount of the note in about two and one-half years has been substantial by that method. According to the evidence the defendant was not delinquent in his payments under the terms of the obligation and defendant was making reasonable effort to be in position to continue the payments. The resort to an attachment such as here employed is a harsh process and plaintiff must be held to strict, definite and positive proof of defendant’s fraudulent intent. There is no such proof in this case. Douglas Public Service Corporation v. Leon, 196 La. 735, 200 So. 21.
The writ of attachment was improvidently issued and the trial court was eminently correct in dissolving it.
 Also, the trial Court properly allowed reasonable attorney’s fees as damages. Counsel for plaintiff argues, of course, that the writ should not be dissolved, but, he says, if it is dissolved, the plaintiff should not be required to pay any damages, for the .reason that he gave his attorney all the information he had and the attorney sought to obtain judicial security for protection of plaintiff’s rights. The main error in counsel’s position is that it is not so much what plaintiff actually believed, but the question is was there any evidence to show that defendant intended to defraud his creditors. There being no such intent on the part of defendant, he is entitled to actual damages in the form of attorney’s fees. An examination of the record reveals that the services rendered by defendant’s attorney was sufficient to entitle defendant to attorney’s fees in the sum of $250.00, as allowed by the trial Court. State Bank v. Martin, 52 La.Ann. 1628, 28 So. 130; Moore v. Withenburg, 13 La.Ann. 22; Teal v. Lyons, 30 La.Ann. 1140; M. L. Byrne & Co. v. L. H. Gardner & Co., 33 La.Ann. 6; Newsom & Co. v. Smith, 9 La.App. 693, 120 So. 248.
For these reasons, the judgment appealed from is affirmed and the plaintiff will pay costs.
Affirmed.