McBRIDE, Judge.
On February 3, 1961, plaintiff filed this suit seeking to recover judgment against defendant for $75,000, which amount defendant is alleged to have wrongfully appropriated to himself while employed as comptroller at plaintiff’s department store; plaintiff prayed for and obtained a writ of attachment based on the grounds defendant “is about to dispose of his property, or some part thereof, with intent to defraud his creditors and has converted, or is about to convert, property into money with intent to place it beyond the reach of his creditors” ; under said writ all banks and a brokerage concern in New Orleans and all banks in the Parish of Jefferson were made garnishees. Defendant moved to dissolve the writ for the reason the alleged grounds upon which it issued are false and untrue. The motion was tried and sustained; the writ and the garnishments were dissolved.
Defendant contends that at the time the writ was issued, or prior thereto, he never intended to dispose of any of his property or to place it beyond the reach of his creditors.
The following facts were developed at the hearing of the motion to dissolve:
On January 22, 1961, defendant accompanied by one of his children, left Louisiana and went to Georgia for a vacation; he also intended to seek future employment there. On Sunday, February 5, 1961, his wife, who had remained in New Orleans with three of their children, opened a letter which had been written and sent by Citizen & Southern Bank of Atlanta, Georgia, to defendant notifying him that in connection with legal proceedings instituted in Georgia by the instant plaintiff, defendant’s account in that bank had been seized. Mrs. Gregory telephoned defendant at Pitts, Georgia, and apprised him of the contents of the letter, and defendant told her that he would communicate with her later that evening. Defendant, accompanied by his brother, consulted a lawyer. He then made several long distance telephone calls to employees of plaintiff in New Orleans in an endeavor to obtain information regarding the Georgia garnishment but was unable to learn anything. Upon his attorney’s advice defendant telephoned Mrs. Gregory and instructed her to withdraw the money from their various bank accounts. Up to this time defendant had no knowledge whatever that the instant proceedings had been filed against him as no service had been made. On the morning of Monday, February 6, Mrs. Gregory succeeded in withdrawing $9,600 from a checking account in one bank (despite prior service of the garnishment upon it). No withdrawals were made from three other banks in which funds belonging to defendant and/or his wife were on deposit. The garnishment of the accounts had been effected. On the morning of February 6 defendant contacted his New Orleans broker, giving it instructions to close out his securities and commodities trading accounts and to forward the proceeds therein to him in Georgia. By supplemental petition said brokerage firm was named as garnishee, but defendant had accomplished the closing out of his accounts by the time service of the garnishment process was made. Upon receipt of the checks from the broker, aggregating $38,390.00, defendant endorsed them over to his brother, J. T. Gregory, who in turn gave defendant a promissory note for the sum of $33,149.03, dated February 7, 1961, payable to the order of defendant, signed by Putnam Construction Company “by J. T. Gregory, President.” Defendant then endorsed said note over to one Guy Connor, to whom he allegedly owed approxi *121 mately $60,000. Defendant returned to New Orleans two days later (February 9th).
Other pertinent facts which appear are: Defendant voluntarily left plaintiff’s, employ on January 21, 1961, and Mr. Miller, plaintiff’s President who executed the affidavit annexed to the petition, paid defendant’s salary up to March 1, he personally signing the check therefor; that Miller made no demand upon defendant nor mentioned any contemplated lawsuit. Defendant and his wife own their home in the Parish of Jefferson and the defendant has never made any effort to sell it and has never contemplated doing so. Defendant also owns farms in Georgia and is in the cattle business there. The New Orleans broker in making settlement with defendant remitted more than was due, and defendant, when he returned to New Orleans, refunded to the broker $9,081.62, which was the amount overpaid.
Art. 3541 of the LSA-Code of Civil Procedure provides, in part, as follows:
“A writ of attachment may be obtained when the defendant:
******
“(2) Has mortgaged, assigned, or disposed of his property or some part thereof, or is about to do any of these acts, with intent to defraud his creditors or give an unfair preference to one or more of them;
“(3) Has converted or is about to ■convert his property into money or evidences of debt, with intent to place it beyond the reach of his creditors; * * *⅜«
Under what circumstances a debtor ■shall be regarded as "about” to fraudulently dispose of or convert his property into money or evidences of debt with intent to place it beyond the reach of his creditors is not set out in the law, and the only course to pursue is to leave every case in which the question arises to be controlled by its •own peculiar facts and circumstances. ■
Amongst the definitions given by Webster 'of the word “about” are: “Near; not far from”; “engaged in; intent upon”; “on the point or verge of; in the act of.”
From these definitions, when the debtor entertains a fraudulent design which he may be calculated to soon carry out, he can be considered as about to dispose of his property to defraud, and under the article above-quoted from, the writ of attachment would then be in order.
Plaintiff-appellant takes the position that because defendant is being sued for the recovery of allegedly stolen money, the fact that the debt was unlawfully incurred raises a presumption that the debtor was “about” to dispose of or convert his property and funds with the intent of placing the same beyond reach of plaintiff. Say counsel in their brief:
“The issue before this Court is, therefore, whether a person who has stolen money is, within the meaning of Article 3541 of the Louisiana Code of Civil Procedure, ‘about to’ dispose of or convert his property with the intent of placing it beyond the reach of his creditors, and particularly whether defendant Gregory, in the instant case, was at the time suit was filed ‘about to’ dispose of or convert funds and accounts standing in his name with the intent of placing this property beyond the reach of plaintiff, his victim. It is submitted that the fact, taken as true for the purpose of the motion to dissolve, that defendant stole money from plaintiff, was sufficient to show clearly that defendant was ‘about to’ dispose of or convert his property with the intent of placing it beyond the reach of plaintiff. * * *
“It is submitted that the drafters of the Code of Civil Procedure would be surprised to learn that it was their intent to so restrict the right to a writ of attachment that the victim of a theft cannot attach funds of the thief, espe- *122 dally in a case in which, before learning of the attachment, the thief actually disposed of and converted his funds in an effort and with the intent to place them beyond the reach of his victim. Certainly the victim is entitled to a legal finding- that at any time the thief is ‘about to’ dispose of his property in order to conceal it. * * * ”
We do not agree that such contention is valid. When determining the question whether this defendant was about to dispose of or convert his property to defraud, he must be treated as any other ordinary debtor. Even if we accept as true plaintiffs allegations that defendant embezzled its funds, there is no law in Louisiana that we know of which would make the fact that the debt or obligation was criminally contracted or incurred an additional ground for the issuance of an attachment or which would place the claimant in the category of a preferred or secured creditor.
“A debtor who has formed a design to dispose of his property and intends soon to carry it out is ‘about’ to dispose of his property within the meaning of the attachment statutes; * *.
⅜ ⅜ ⅜ ⅜ ⅜ ¾:
“Where the attachment is based on a contemplated fraudulent disposal of his property by a debtor, the fraudulent intent is the gist of the matter; and to justify the remedy such intent must exist at the time the attachment issues, and must be in all respects similar to the intent which actuates a debtor making an actual fraudulent transfer of his property.” 7 C.J.S. Attachment § 50, p. 225.
In order to sustain the attachment there must be proof that at the time the writ issued the defendant had done, or was about to do, the act charged. Chaffe v. Mackenzie, 43 La.Ann. 1062, 10 So. 369.
In Douglas Public Service Corporation v. Leon, 196 La. 735, 200 So. 21, the Court said:
“ * ⅜ * The intent is the principal ingredient of the cause of action. In order to prove fraudulent intent, the acts and declarations of the debtor, as well as the surrounding circumstances, may be shown, since intent, which is subjective, can only be proved by objective signs. It is well settled that an actual fraudulent intent must exist on the part of the debtor. Mere appearances are not sufficient, even though the conduct of the debtor may indicate an intent to defraud.”
The writ of attachment is the harshest of conservatory writs and to sustain it the evidence must show clearly the plaintiff’s right thereto. Harrison v. Atlas Signcrafts Co., La.App., 200 So. 173.
In Boyd v. Labranche, 35 La.Ann. 285, the Supreme Court said:
“The validity of attachment process depends upon the conditions existing at the time it is sued out, and the circumstances as they give color to apprehensions or beliefs reasonably induced by a debtor’s conduct at the time. Debtors who are about to attempt to evade their creditors generally adopt sinuous methods. They try to deceive those they are plotting to defraud, * * (Italics ours.)
The provisions of law authorizing the writ of attachment for causes set forth therein will not serve to afford a conservatory remedy in all cases in which a creditor entertains suspicions which cannot be sustained by affirmative evidence of a defendant’s intention to defraud. Givens v. Emmer, 6 Orleans App. 8.
We have carefully analyzed the evidence adduced on the trial of the motion to dissolve the writ, and we see nothing therein which would lead a reasonable mind *123 to a conclusion that at the time the writ of attachment issued defendant was “about” to dispose of his property or to convert it into money in order to shield it from the claim of plaintiff or from the demands of any other creditor which defendant may have had. Defendant left Louisiana for a vacation in Georgia accompanied by his young son. When he severed his employment with plaintiff, Mr. Miller, who signed the affidavit appended to the petition, made no demand upon him nor did he inform defendant that plaintiff had any claim against him. Defendant was paid his wages to a future date. He never had any inkling that plaintiff contemplated asserting a claim until his wife read to him the letter from the Atlanta hank.
Upon departing temporarily from Louisiana, defendant left his bank accounts, safety deposit box, and the two brokerage accounts just as they were. To demonstrate that deposits and property remained in status quo is the fact that the writ of attachment herein reached, through the garnishments, funds in several of the bank accounts of defendant and the real property has also been levied upon. If defendant had any notion to dispose of his property upon leaving Louisiana or at the time the writ was issued, we believe he would have carried out his intention as this could have been accomplished with no difficulty at all notwithstanding his absence from New Orleans. The thing that impresses us greatly is that upon returning to New Orleans defendant made prompt settlement with his. broker for the substantial amount which the broker had overpaid in settling accounts. If there had been any fraudulent intent to cheat anybody, certainly the circumstance of the overpayment would have afforded defendant an unequalled opportunity to do so.
We think that the trial judge was correct in dissolving the writ on the basis of the evidence tendered.
Therefore, the judgment appealed from is affirmed.
Affirmed.