158 So.2d 623 (1963)
AMERICAN STEEL BUILDING CO., Inc., Plaintiff-Appellant,
v.
Barnet BREZNER, Defendant-Appellee.
No. 926.
Court of Appeal of Louisiana, Third Circuit.
December 3, 1963.
*625 Hall, Raggio & Farrar, by David H. Garrett, Lake Charles, for plaintiff-appellant.
Gold, Hall & Skye, by William E. Skye, Alexandria, for defendant-appellee.
Before TATE, SAVOY, and CULPEPPER, JJ.
TATE, Judge.
The present is an appeal by the plaintiff ("American Steel") from a judgment dissolving attachments which it had obtained against the defendant Brezner, who was also awarded $7,400 in damages. We have previously denied a motion to dismiss this appeal. 155 So.2d 83.
The chief issue of this appeal is whether or not the attachments dissolved by the trial court were wrongfully obtained by American Steel, the plaintiff.
This suit's main demand, which is not before us now, concerns American Steel's prayer for a money judgment against Brezner and his surety ("Fireman's"). In our discussion below, we will use round figures only, in order to simplify the discussion.
American Steel's suit for $46,000 arose out of its sale for this sum to Brezner of certain materials used by him in constructing an airport in connection with a construction contract with the Calcasieu Parish Airport District, a public body. Brezner agreed to perform this contract for $119,600, which performance was secured by a bond with Fireman's as surety.
As a provisional remedy in this suit, American Steel additionally sought and obtained the issuance of writs of attachment, based upon allegations that the defendant Brezner had committed an unfair preference *626 by assigning the proceeds of certain building contracts to Fireman's. American Steel garnished under this writ of attachment the amounts due to Brezner under his construction contract with the Calcasieu Airport District and also those due him under another construction contract he had with the City of Shreveport.[1] After first bonding the release of the proceeds attached, LSA-C.C.P. Art. 3507, the defendant Brezner moved to dissolve the attachment.
As earlier noted, the present appeal is from judgment dissolving the attachment. The trial court held that such attachment was not justified in law and constituted an attempt by American Steel to force a quick payment of its bill in full despite offsets claimed by Brezner.
1. The Attachment on the Ground of an "Unfair Preference".

The present attachment was sought under LSA-C.C.P. Art. 3541, which pertinently provides:
"A writ of attachment may be obtained when the defendant: * * * (2) Has mortgaged, assigned, or disposed of his property or some part thereof, or is about to do any of these acts, with intent to defraud his creditors or give an unfair preference to one or more of them; * * *." (Italics ours.)
By way of preliminary observation, this statutory provision sets out two separate grounds for attachment: (1) The transfer of property "with intent to defraud" creditors; "or" (2) the transfer of property with intent to "give an unfair preference." Although some statements in the jurisprudence overlook it, there is a distinction between these two grounds. Swift & Co. v. Bonvillain, 139 La. 558, 71 So. 849, 857-859 (1916).
For instance a specific intent to defraud must be proved in the case of the former ground. Douglas Public Service Corp. v. Leon, 196 La. 735, 200 So. 21 (1941), noted at 4 La.L.Rev. 302 (1942). However, specific fraudulent intent need not be proved for the latter ground, since the unfair preference may result as a matter of law. Swift & Co. v. Bonvillain, cited above (stating that the debtor "must be presumed to have intended the necessary consequence of his acts", 71 So. 858).[2]
It is also to be especially noted that the statutory language does not provide that any preference whatsoever shall constitute *627 ground for an attachmentonly "unfair" preferences do so.
A "preference", of course, results when an insolvent debtor pays or secures a larger amount to a creditor than such creditor would be entitled to receive on a pro rata distribution of the debtor's assets, so that the effect of the transfer is to give the creditor a greater percentage of his debt than other creditors of the same class. See Black's Law Dictionary (4th ed., 1951) "Preference", p. 1342.
What then, is an "unfair" preference within the meaning of the code article, so as to justify the issuance of a writ of attachment?
The jurisprudence holds that the term "unfair preference" used in the attachment statute refers to the type of preference which under the LSA-Civil Code (Articles 1983, 1984) constitutes a constructive fraud against the rights of other creditors. Swift & Co. v. bonvillain cited above; Bank of Patterson v. Urban Co., 114 La. 788, 38 So. 561 (1905); Rapides Packing Co. v. Bourgeois, La.App. 2 Cir., 11 La.App. 251, 123 So. 421 (1929). Succinctly, under these Civil Code provisions, a preference is unfair and a constructive fraud "where the creditor knew that the debtor was in insolvent circumstances and the transaction gives the creditor any advantage over other creditors." Bank of Patterson v. Urban Co., cited above, at 38 So. 563.[3]
This is an area of the law infrequently litigated. Further, in the decisions on the question, commingled intent-to-defraud and unfair-preference elements of the debtor's conduct were often charged by the attaching creditor, or sometimes several different preferential acts were charged; so it is sometimes unclear from the court's opinion just what conduct was regarded as significant to its decision.
Nevertheless, subject to these limitations and to this imprecision in characterization, we have attempted below to classify the decisions that sustained an attachment on the ground of an unfair preference, as well as those that refused to do so. Our classification treats only of those types of conduct which have thus far been the subject of litigation; it does not pretend to be an allinclusive listing of all types of conduct which may be considered preferential.
Thus, the courts have held that an unfair preference sufficient to justify an attachment resulted when the preferred creditor:
was consigned goods in excess of the amount of a debt secured by lien, so that the excess was thus diverted to the unsecured portion of the creditor's claim, to the prejudice of other unsecured creditors, Swift & Co. v. Bonvillain, 139 La. 558, 71 So. 849 (1916);
received a preferential mortgage, Groner v. Capitol Syrup Co., La.App.Orl., 10 So.2d 269 (1942);
was favored by a confession of judgment, Joseph Bowling Co. v. Colvin, 49 La. Ann. 1340, 22 So. 374 (1897), Rapides Packing Co., Inc. v. Bourgeois, La.App. 2 Cir., 11 La.App. 251, 123 So. 421 (1949), or was aided by the debtor to obtain a judgment in advance of other creditors of the same class, Bank of Patterson v. Urban Co., 114 La. 788, 38 So. 561 (1905); or
received a preferential transfer of the debtor's stock of merchandise, Stevens v. Helpman, 29 La.Ann. 635, 638 (1877).
On the other hand, preferential transfers were not considered sufficient justification *628 for an attachment on the ground of an unfair preference, when such transfer:
was a transfer of property to pay a debt already secured by a lien or privilege on the property in favor of the preferred creditor, State Bank of New Iberia v. Martin, 52 La. Ann. 1628, 28 So. 130 (1900) (crop pledge), Winter v. Davis, 48 La.Ann. 260, 19 So. 263 (1896) (Syllabus 4, dation en paiement to satisfy legal mortgage of wife on property of husband for her separate property, LSA-Civil Code Article 3319);
did not prejudice the plaintiff, since the plaintiff's debt was adequately secured, Arcadia Cotton Oil Mill & Mfg. Co. v. Fisher, 120 La. 1076, 46 So. 28 (1908);
constituted only the securing of a present advance made in consideration therefor, Montgomery v. New Roads Oil Mill & Mfg. Co., 1 Cir., 2 La.App. 580 (1925), or was a consideration for continuing credit in the future, G. Seeligson & Co. v. A. Rigmaiden & Co., 37 La.Ann. 722 (1885);
or amounted only to the daily sale of his goods by the debtor-merchant in the regular course of his business, Hernsheim & Brother v. L. A. Levy, 32 La.Ann. 340 (1880).
This jurisprudence can, we think, be summarized as holding that an "unfair preference" (i. e., a constructive fraud under LSA-Civil Code Articles 1983 and 1984) sufficient to justify an attachment takes place only: when the attaching creditor has been actually prejudiced through a transfer or security furnished by the insolvent debtor to another creditor; when such transfer or security also has the effect of giving such latter creditor an advantage he did not have prior thereto over creditors of the same class as the attaching creditor; and when such transfer or security also has the further effect of actually diminishing the share of the share of the debtor's goods otherwise available to satisfy the claim of the attaching creditor.
2. The Present Case.
In the present case the evidence shows that, at the time of the present suit and attachments, the defendant Brezner was in failing financial circumstances and was unable to meet the payments as they became due on several large construction contracts. In addition, all of his property was encumbered by a pre-existing mortgage in the amount of $360,000, and he additionally owed $100,000 to a Dallas bank.
The precipitating circumstances giving rise to the attachment by American Steel, the plaintiff, were: (a) the defendant Brezner's failure to pay even part of American Steel's $46,000 claim for materials, although Brezner had already received payment from the contracting public body, per periodic estimate, for the materials thus furnished to him for the airport construction job; (b) a general investigation showing that Brezner was becoming delinquent in payments to subcontractors, as a result of which liens were being filed against him on other construction contracts, and further information showing that he owed large sums and had previously encumbered all his assets; (c) Brezner's assignment to his bonding sureties of the proceeds due to him from several construction contracts upon which he was engaged.
As earlier stated, American Steel secured the present attachments, tying up the proceeds due Brezner on a Lake Charles and on a Shreveport contract, on the ground that Brezner had unfairly preferred his bonding companies by assigning to them the proceeds to become due to him from certain construction contracts.
As previously noted also, Brezner was indebted to American Steel for certain materials furnished by that firm in connection with his Lake Charles airport construction contract. As to this contract, several claims against the bond had already been filed at the time of suit.
The balance due to Brezner from this contract was some ten thousand dollars less than the amounts Brezner owed for materials furnished for his use on the job. However, the plaintiff and several other materialmen had recorded their claims, *629 LSA-R.S. 38:2242, at the time the present suit was filed.
If the recording of this claim by American Steel was valid and timely, the evidence shows that the liability of Fireman's on the performance bond was sufficient to pay all outstanding claims owed by Brezner for work performed and materials used in that Lake Charles construction contract.
American Steel contends, however, that nevertheless the assignment of the Shreveport construction contract amounted to a preference as to it. This is because the surety on that performance bond to whom Brezner assigned the funds ("National", a subsidiary of Fireman's) received some ten thousand dollars of funds owed to Brezner by the contracting authority, in excess of the unpaid claims against Brezner on the Shreveport contract. Thus, as American Steel's able counsel argues, Brezner's funds paid to the surety in excess of the latter's liability on its bond, might amount to a preference and a diversion of these monies from the common fund otherwise available to all creditors. See Swift & Co. v. Bonvillain, 139 La. 558, 71 So. 849, which also concerned a situation where the preferential transfer took place by virtue of a prior contract, which contract did not constitute a privilege or mortgage as to these excess funds.
Even so, however, we have ultimately concluded that such preference is not "unfair" as to American Steel so as to justify an attachment by it on this ground. Although the common fund available to unsecured creditors was thus diminished, American Steelas an adequately secured creditorwas not injured by the preferential assignment, which assignment thus was not a constructive fraud against it so as to justify its obtaining an attachment by reason thereof. See Arcadia Cotton Mill & Mfg. Co. v. Fisher, 120 La. 1076, 46 So. 28 (1908).[4]
The general counsel of the plaintiff firm testified that he requested the attachment to issue, even though American Steel had recorded its claim, because in his experience the validity and timeliness of the recordation of these claims was so often contested by the bonding companies if, as here, the contractor became insolvent.
However, at the trial, it was proved that, in fact, American Steel's claim was timely filed and valid against the performance bond, and that there was adequate security to pay such claim by reason of the surety's liability on the performance bond.
American Steel as creditor may indeed have had cause to feel prejudiced by the assignment by its debtor of all of the debtor's accounts receivable, in view of the failing circumstances of the debtor and a possible contest as to the validity of its claim against the bonding company. Nevertheless, at the trial of the motion to dissolve the attachment grounded on these preferential assignments, it was proved that, in fact, the attaching creditor did have adequate security by reason of the performance bond, so that its fears were unfounded that it was prejudiced by the assignment.
The writ of attachment is the harshest of conservatory writs; to sustain it, the evidence must clearly show that the plaintiff's right to it existed at the time the writ issued. Charles A. Kaufman Co. v. Gregory, La.App.Orl., 145 So.2d 119 (reversed on other grounds, 244 La. 766, 154 So.2d 392), citing the jurisprudence to this effect. Thus, even though the surrounding circumstances at the time the writ issues may reasonably seem to justify the attachment; the attachment will not be sustained if, on trial of the motion to dissolve it, the *630 evidence shows that in fact the statutory ground for the attachment did not exist. Douglas Public Service Corp. v. Leon, 196 La. 735, 200 So. 21 (1941). The creditor attaches at his risk that, whatsoever the appearances at the time of attachment, the evidence on a motion to dissolve will prove that in fact no lawful grounds existed to support the attachment.
The evidence at the trial proves that the defendant Brezner's attachments did not constitute an "unfair preference" as to the present plaintiff within the meaning of the jurisprudence, since in fact this plaintiff's claim was adequately secured by the performance bond. The trial court therefore correctly dissolved the attachment, and we affirm its judgment in this regard.
3. Damages.
As stated by our Supreme Court in General Motors Acceptance Corp. v. Sneed, 167 La. 432, 119 So. 417, 421 (1929): "`Where a plaintiff sues out a writ of attachment in the honest belief that it is necessary for the protection of its rights, it seems rather unfortunate that it must be held liable for the payment of damages. But the writ of attachment is an extremely harsh remedy, and, when a party makes use of this powerful legal weapon he must be ready to respond in damages if it be found that the writ was wrongfully used.'"
This Sneed decision, citing well settled jurisprudence, holds that in such instance the defendant is entitled to recover actual damages sustained by him as a result of the attachment, and that these compensatory damages may also include general damages for the defendant's humiliation and mortification, etc., as well as for attorney's fees and other expenses caused by the attachment. See 3 West's Louisiana Digest (1950) "Attachment".
In the present case, the trial court held that American Steel's attachment was an attempt to force a quick payment of its claim in full, despite offsets claimed by Brezner. Concluding that the plaintiff's attachment was malicious in nature, the trial court awarded damages as follows:

Attorney's fees $ 2,000.00
Bonding premium for bonding
the writs 2,400.00
Humiliation, inconvenience
and harassment 2,000.00
Punitive damages 1,000.00
 __________
 Total $ 7,400.00

American Steel contends that the amounts awarded are either excessive or not justified by law.
(1) As to the attorney's fees awarded for services (only) to dissolve the attachment, cf. LSA-C.C.P. Art. 3506, they are fully supported by the evidence.
(2) Likewise, the bonding fees of $2,400 to release the sums attached are proved by the evidence. The plaintiff argues that they should be disallowed, however, because not expressly pleaded as an item of damages by Brezner's motion to dissolve (which, however, demanded total damages of $236,000)but evidence concerning this expense of release of the attachment was received without objection, Tr. 336, so the pleadings were enlarged in this respect, LSA-C.C.P. Art. 1154.
(3) As to the award of $2,000 for "humiliation, inconvenience and harassment", the record reflects that an attachment in the construction industry is reasonably rare, since bonding companies usually move in to pay creditors when contractors fail. Therefore, the present attachment received widespread notice in the construction industry in which Brezner is engaged, which caused him considerable embarrassment and humiliation. The trial judge is accorded great discretion in the assessment of such non-pecuniary damages, LSA-Civil Code Article 1934(3), Gaspard v. Lemaire, La., 158 So.2d 149, rendered on rehearing November 12, 1963, and we cannot say this *631 discretion was abused by this award. We therefore affirm this award.
Under the modern Louisiana jurisprudence, incidentally, this type of damages is regarded as compensatory, although in some of our earlier cases, as well as in other jurisdictions, such damages are sometimes characterized as exemplary or punitive. See Loeblich v. Garnier, La.App. 1 Cir., 113 So.2d 95 (1959) certiorari denied.
(4) As to the fourth item, the trial court's award of $1,000 "punitive damages", it was based upon older jurisprudence to the effect that, in addition to actual damages, a defendant may recover punitive damages for a wrongful attachment, if the defendant acted maliciously in the matter. See Wall v. Hardwood Manufacturing Co., 127 La. 959, 54 So. 300 (actually awarding $500 punitive damages, in addition to other special and general damages), as well as cases containing general statements to this effect at 3 West's Louisiana Digest (1950) "Attachment".
Nevertheless, as concluded in the Comment, 12 La.L.Rev. 433 (1952), Footnote 2, referring to cases which suggested that punitive damages may be allowed for malicious or wrongful attachment: "Yet in Vincent v. Morgan's Louisiana & T. R. & S. S. Co., 140 La. 1027, 74 So. 541 (1917), the supreme court clearly held that there is no authority in Louisiana for awarding punitive damages in civil cases. This point seems now to be well settled. McCoy v. Arkansas Natural Gas Co., 175 La. 487, 143 So. 383 [85 A.L.R. 1147] (1932); Moore v. Blanchard, 216 La. 253, 43 So.2d 599 (1949)." Thus, earlier expressions in the jurisprudence permitting punitive damages in certain instances are, in our belief, now overruled. See 7 West's Louisiana Digest "Damages".
Therefore, in our opinion, our trial brother's award of $1,000 for "punitive damages" should be disallowed.
Decree.
For the reasons assigned, the judgment of the trial court is amended so as to reduce the total amount of the award to the defendant by disallowing the $1,000 award for "punitive damages"; as thus reduced and amended, the judgment is affirmed in all other respects. The costs of this appeal are to be paid by the plaintiff-appellant.
Amended and affirmed
NOTES
[1] We may here state that initially we entertained some doubt that any amounts were actually garnished under the writs issued herein.

In answers to the interrogatories, both of the garnishees denied categorically owing any sums due to Brezner under the construction contracts in question. The plaintiff did not traverse the garnishees' answer, LSA-C.C.P. Art. 2414. Further, the record indicates that Brezner, being in default in these construction contracts, had assigned the proceeds of each of them to his respective sureties on the performance bonds therein, prior to the service of the garnishment interrogatories (and, in fact, prior to filing of this suit).
It might well be argued, then, that actually no proceeds were garnished by virtue of the personal writs of attachment. See, e. g., Cagle Supply of Lafayette, Inc. v. Hinson, La.App., 3 Cir., 155 So.2d 773, certiorari denied. We have decided, however, to overlook such a contention, since in their argument to this court both parties treat the writs of attachment as having effectively garnished all unpaid amounts due under these contracts to Brezner and/or his sureties.
[2] This decision also notes most of the earlier cases which incorrectly seemed to indicate that specific fraudulent intent is necessary for an unfair preference, an error resulting from the confusion of this ground with the intent-to-defraud ground. See more recent decisions which seem to overlook the distinction between the two grounds: Kessler v. Dugar, La.App. 4 Cir., 144 So.2d 733; Harrison v. Atlas Signcrafts Co., La.App. 2 Cir., 200 So. 173. Cf. also, however, LSA-C.C. Art. 1978.

See also: Comment, The Revocatory Action, 9 Tul.L.Rev. 422 (1935); Note, 8 Tul.L.Rev. 277 (1934).
[3] LSA-Civil Code Article 1984 defines such unfair preference as follows: "Every contract shall be deemed to have been made in fraud of creditors, when the obligee knew that the obligor was in insolvent circumstances, and when such contract gives to the obligee, if he be a creditor, any advantage over other creditors of the obligor." See also LSA-Civil Code Article 3183, stating that "The property of the debtor is the common pledge of his creditors, and the proceeds of its sale must be distributed among them ratably, unless there exists among the creditors some lawful causes of preference."
[4] Cf., however, Comment, The Revocatory Action, 9 Tul.L.Rev. 422, 426 (1935): "Secured creditors, whose rights are endangered, may institute the revocatory action even though they have other means of recovering what is due. It would be unjust to allow unsecured creditors greater rights than creditors who have preserved their interest by obtaining added security."