h SULLIVAN, Judge.
Teche Electric Supply, Inc. appeals a judgment dissolving a writ of attachment that it obtained against D.W. Williams, Inc. and Daniel Williams, individually, in an attempt to collect on an open account. For the following reasons, we reverse and remand.
Discussion of the Record
In its petition, Teche Electric alleged that Defendants failed to pay for $100,146.27 in electrical supplies that D.W. Williams, Inc. had purchased for use primarily in two construction projects in Lake Charles, Louisiana, one for the Calcasieu Parish School Board and the other for an automobile dealership. The petition further alleged that a writ of attachment was necessary because Defendants were liquidating business assets with the intent to defraud creditors and because Mr. Williams was leaving this country to take a job in Nigeria. Upon issuance of the writ, Teche Electric seized several vehicles and other equipment from D.W. Williams, Ine.’s place of business on January 21, 2000.
At the hearing on Defendants’ motion to dissolve the writ, Mr. Williams testified about his business activities before the seizure. He admitted that he had been replaced by other electrical contractors on both the school board and the automobile dealership projects and that he had laid off employees hired for these jobs. He acknowledged that he had offered to sell all of his business tools and equipment to other contractors, such as Scott Montgomery and Willie Newlin, and that he had pursued a job prospect with an oil company in Nigeria. He also admitted that approximately one week before the seizure, on January 11 and 12, 2000, he ran an ad in local newspaper that stated, “Contractor selling all tools and trucks” and “going out of business.” The ad did not identify “D.W. Williams, Inc.” as the contractor that | ¡.placed it, and it did not include D.W. Williams, Inc.’s regular business telephone number, which had already been disconnected.
At the hearing, Mr. Williams testified that he was “downsizing” his business by selling off unnecessary items, but that he still had contracts pending that could have been completed but for Teche Electric’s seizure of his tools and equipment. He noted, in particular, a contract with Shay Construction Company from which he predicted a profit of $125,000.00. He explained that he used the words “going out of business” in his ad because he wanted to attract upper-end contractors rather than “garage-salers.” The sale of equipment from that ad brought in approximately $52,000.00, of which $41,000.00 is on deposit with his attorney to pay his creditors.
Mr. Williams also testified that between June and November of 1999, he received over $300,000.00 for work performed on the automobile dealership project. With each payment on that job, he signed an affidavit certifying that “all labor, materials and service furnished ... have been paid in full.” However, Mr. Williams admitted that he did not. pay Teche Electric or some other suppliers with the funds received from that job. On December 16, 2000, D.W. Williams, Inc. tendered a check for $4,267.70 for payment on its account with Teche Electric, but that check was returned twice for insufficient funds. Mr. Williams estimated that he owed approximately $200,000.00 to other suppliers.
After Mr. Williams’ testimony, counsel for Teche Electric attempted to call Scott Montgomery to the stand, explaining that *476 Mr. Montgomery would testify that Mr. Williams offered to sell him everything else on his lot on the date of the seizure because he was going to Nigeria the following week. The trial court accepted that, if called, Mr. Montgomery would so testify, but found that this information would | shave no impact on its decision. The trial court then held the seizure to be improper under the totality of the circumstances, finding that Mr. Williams did not try to secret his assets, as he placed the proceeds from the sale of substantial property with his attorney, and that the items seized were exempt from seizure as the tools of Mr. Williams’ trade.
On appeal, Teche Electric argues that the trial court erred (1) in ruling that Teche Electric did not prove the grounds for attachment under La.Code Civ.P. art. 3541; (2) in applying the “tools of the trade” exemption from seizure to a corporate defendant; and (3) in limiting Teche Electric’s evidence and refusing to allow it to call additional witnesses.
Opinion
La.Code Civ.P. art. 3541 provides in part (emphasis added):
A writ of attachment may be obtained when the defendant:
[[Image here]]
(2) Has granted a security interest under Chapter 9 of the Louisiana Commercial Laws (R.S. 10:9-101, et seq.), or has mortgaged, assigned, or disposed of his property or some part thereof, or is about to do any of these acts, with intent to defraud his creditors or give an unfair preference to one or more of them;
(3) Has converted or is about to con-veH his property into money or evidences of debt, with intent to place it beyond the reach of his creditors;
(4) Has left the state permanently, or is about to do so before a judgment can be obtained and executed against him; or ....
Teche Electric first argues that the trial court erred in finding that it failed to prove that grounds for attachment existed at the time of the seizure. We can readily discuss whether the requirements of paragraph (4) above have been met. In Matthews v. Byford, 240 So.2d 765 (La.App. 2 Cir.1970), the court dissolved a writ attachment that had issued based solely on the defendant’s statement that he would be moving out of state, notwithstanding the plaintiffs justified belief in the statement. In Safety Finance Service, Inc. v. Nevett, 270 So.2d 260 (La.App. 4 Cir.1972), the court found that a newspaper report of the defendant, a professional football player, being traded to another team would not support an attachment, in light of the defendant’s testimony that a knee injury placed the trade in doubt. In the present case, Mr. Williams admitted that he pursued a job opportunity in Nigeria and that he told others he would be going to that country. However, at trial he testified that he was not hired for that position. We find no error in the trial court’s finding that Teche Electric faded to prove that Mr. Williams was “about to [leave the state permanently] before a judgment can be obtained and executed against him” as required by paragraph (4) of Article 3541.
To sustain an attachment under the grounds italicized above in paragraph (2), the plaintiff must prove a “specific intent to defraud.” American Steel Bldg. Co. v. Brezner, 158 So.2d 623, 626 (La.App. 3 Cir.1963), citing Douglas Pub. Serv. Corp. v. Leon, 196 La. 735, 200 So. 21 (1941). In Douglas, 196 La. at 741, 200 So. at 22-23, the court discussed the requirements of both paragraphs (2) and (3) when it explained the element of intent as follows:
The intent is the principal ingredient of the cause of action. In order to prove fraudulent intent, the acts and declarations of the debtor, as well as the surrounding circumstances, may be shown, since intent, which is subjective, can only be proved by objective signs. It is well settled that an actual fraudulent intent must exist on the part of the *477 debtor. Mere appearances are not sufficient, even though the conduct of the debtor may indicate an intent to defraud.
In evaluating the debtor’s conduct, the court in Douglas further explained:
|SA debtor’s attempt to dispose of some or all of his property, especially when he is in failing circumstances, or his granting a mortgage in favor of one creditor, leaving others unsecured, may, but does not necessarily, afford sufficient ground to support an attachment. It all depends on the debtor’s intent. If the surrounding circumstances, coupled with the acts and doings of the debtor, clearly indicate his intent to defraud, the attachment should be sustained. Otherwise it should be dissolved.
Id., 196 La. at 742-43, 200 So. at 23 (emphasis added). The trial court’s finding as to the debtor’s intent is a question of fact that will not be disturbed on appeal absent manifest error. Groner v. Capitol Syrup Co., 10 So.2d 269 (La.App.Orleans 1942).
In the present case, the trial court found that Mr. Williams did not act with the intent to defraud or the intent to place property out of reach of creditors based upon the fact that he deposited most of the proceeds from the sale of his equipment with his attorney and upon his testimony that his business still had contracts pending. However, we find that the trial court should have considered other factors as well. Although Mr. Williams placed approximately $41,000 .00 with his attorney, he did not offer an explanation as to the disposition of some $11,000.00 that was also collected from that sale. He also falsely certified that he had paid his suppliers from the $300,000.00 that he received on the automobile dealership job between June and November of 1999. When he offered his equipment for sale, he did not advertise under his business’ name, in part because its main telephone line had already been disconnected. Although Mr. Williams testified that he still had contracts pending at the time of his “downsizing,” according to pleadings filed on his behalf, his office had not been open for business at least one week before the seizure.
Mr. Williams attempted to show that his business was still in operation, but the record established that he had been replaced on two major jobs, that he falsified Ifidocuments to state that his creditors had been paid, and that the only payment made on an account with a balance of over $100,000.00 due was with a check for approximately $4,000.00 that was returned for insufficient funds. With his business in these financial circumstances, Mr. Williams advertised the sale of his business assets, but without identifying his company at a time when he was considering relocating overseas. When we consider the totality of the circumstances, as directed by Douglas, we find that the trial court manifestly erred in finding Teche did not meet its burden of proving that grounds for the attachment existed.
Teche Electric next argues that the trial court erred in declaring the items seized exempt as tools of the debtor’s trade under La.R.S. 13:3881. La.R.S. 13:3881(2) exempts from seizure “[t]hat property necessary to the exercise of a trade, calling, or profession by which [the debtor] earns his livelihood.” As explained in Ringham v. Computerage of New Orleans, Inc., 539 So.2d 864, 866 (La.App. 4 Cir.1989), “[t]his exemption applies to a natural person, not a legal one, such as a corporation.” In Mounger v. Ferrell, 11 So.2d 56, 59 (La.App. 2 Cir.1942), the court stated that property owned by a partnership was not exempt from seizure, even if used in the trade or business of the organization, as “[a] partnership is an ideal being and has no living to earn.” Accordingly, we find that the trial court erred in declaring that property owned by D.W. Williams, Inc. was exempt from seizure. Further, we find that the trial court’s mistaken belief that this exemption applied led to another error in restricting Teche *478 Electric from calling additional witnesses in its case-in-chief. However, we need not reach this final assignment of error in light of our finding that the record clearly supports the issuance of the attachment.
17Pecree
For the above reasons, the judgment of the trial court dissolving the writ of attachment is reversed, and the case is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed to Defendants, D.W. Williams, Inc. and Daniel Williams.
REVERSED AND REMANDED.