LAURENT MILLAUDON *v.* ALEXANDER LESSEPS.

In general, all personal actions, except those expressly enumerated, are prescribed by ten years, if the creditor be present, and twenty years, if he be absent.

The claim of an agent against his principal for services is not embraced in the words "open accounts," which, by the statute of 1852, are prescribed against in three years. Ten years is the only prescription against such a demand.

The plea in compensation has a retroactive effect from the time when the plaintiff and defendant became indebted to each other. Hence, the plea of prescription must be overruled where the debts existed simultaneously.

The mandatory, or attorney, is answerable for the interest of any sum of money he has employed to his own use, for the time he has so employed it; and for that of any sum remaining in his hands, from the day he become a defaulter by delaying to pay it over.

APPEAL from the Fourth District Court of New Orleans, *Price, J.*

*John Finney* and *C. Dufour for plaintiff.*—We have before remarked that there is no evidence to show that the plaintiff was bound to account for the proceeds of the note in question. But even if he were, his obligation was not that of a depositary. The relation between him and the defendant was simply that of 'debtor and creditor. *New Orleans & Carrollton Railroad Company* v. *T. B. Harper*, 11 A. R. 212; *Matthews, Finley & Co.* v. *Their Creditors*, 10 A. R. 342; *Sims* v. *Blean*, 10 An. 346.

Nor can the plea of prescription be defeated by the rule "*quæ temporalia sunt ad agendum sunt perpetua ad excipiendum.*" That rule only applies where the claims sought to be compensated are connected together and grow out of the same affair. *Boeto* v. *Laine*, 3 An. 141; *Girod* v. *His Creditors*, 2 An. 546; Troplong, de la Prescription, No. 833.

The judgment of the court below was for the amount demanded by the plaintiff in his petition. We respectfully refer to the judgment and opinion of the lower court.

We respectfully pray for an affirmance of the judgment and costs.

There is a paper pasted on the first page of the transcript, which, your honors will perceive, forms no part of it. This paper bears no date, but was filed in this court on the 13th of November, 1861, the day after the transcript was filed. And the certificate of the clerk, bearing date the 29th of October, 1861, certifies that the transcript contains a full and complete transcript of all the proceedings had, documents filed, and testimony adduced, on the trial of the cause. No statement of facts was therefore admissible, and if so, it was not made in the manner, nor within the time required by law. C. P. 602, 603; 8 N. S. 305; 3 L. R. 455; 16 L. R. 137; 10 An. 554.

*L. Castera* and *P. H. Morgan for defendant.*—This plea of prescription is untenable. L. Millaudon was either a depositary or an agent. If depositary, the law does not allow him to set up the plea of prescription. If an agent, he is in no better condition.

The Civil Code, Art. 3476, says: "Those who possess for others, and not in their own name, cannot prescribe, whatever may be the time of their possession; thus, former tenants, depositaries, usufructuaries, and

all those generally who hold by a precarious tenure in the name of the proprietor, cannot prescribe on the thing thus held."

Commenting upon Art. 2236 of the Napoleon Code, which corresponds to the above quoted article of the Louisiana Code, Troplong says:

"Le mandataire a une possession précaire, puisqu'il reconnaît un maître à qui il doit rendre compte.

"Mais une possession *animo domini* courra-t-elle pour lui à compter de la cessation légale du mandat, ou bien à compter de la reddition de compte?

"Je pense que pour que le vice de précarité soit purgé, le mandataire doit présenter une décharge de son mandant. Alors seulement il y a intervention par le fait d'un tiers, conformément à l'article 2238 (Louisiana Code en 3478), sans quoi la possession continue à rester une possession pour autrui.

"S'il n'y avait pas eu une reddition de compte, on se déciderait par les principes exposés au numéro précédent. Trente années écoulées depuis la cessation légale du mandat feraient supposer que le compte a été rendu a le moment, et que le mandant s'en est contenté; on en conclurait donc que la possession bonne pour précaire, après son point initial, parcequ'il y a eu interversion réelle ou présumée par le fait de celui qui y était intervené. Troplong, Prescription, p. 490.

Thus, as your honors perceive, a mandatory who, under our laws as well as those of France, has a precarious possession of what belongs to his principal, can only plead prescription in two cases, viz:

1. When he can show a discharge from his principal.

2. When thirty years in France and ten years in Louisiana have elapsed since the *cessation légale* of the mandate, and no account has been rendered; and in this latter case, prescription is based upon a supposed interversion, originating from the silence and inaction of the interested party (that is the principal) during the time fixed by law; which necessarily implies that the principal was aware of the cessation of the mandate.

Your honors' predecessors have adopted these views of Troplong, and even have gone further in the much litigated case of *McDonogh* v. *DeLassus et al.*, 10 R. R.; they say, on page 487:

"It seems to us that the law does not, by the contract of agency, establish at once the relation of debtor and creditor, between the agent and principal. That the former may easily become a debtor and the latter a creditor is undeniable; but not, we suppose, until the dissolution of the contract, and the neglect or refusal of the agent to account and pay over the funds and property in his hands."

And on page 488: "We are not prepared to establish, as a general rule, that the relation of principal and agent is that of creditor and debtor; as soon as the latter receives money or property for the former, we regard it as something more. It is a trust, and the receipt of money or property does not give the agent a title to it, which would be the case if he be regarded as a debtor alone."

Now, if the mandatory does not become the debtor of his principal upon receiving money or property belonging to the latter; if he is a mere trustee and acquires no title to the money or property thus received by

him, the inevitable consequence is that his possession continues to be precarious, and he cannot set up the plea of prescription, whatever may be the time of that possession.

But it may be objected that the prescription, nevertheless, runs according to Troplong, from the *cessation legale* of the mandate ; and, according to the Supreme Court, from the dissolution of the contract ; and that, in this particular case, the *cessation legale* or dissolution of the contract had taken place more than ten years before our plea of compensation was set up. There might be some force in the objection, if the mandate in this case had had, either by the will of the law or the agreement of the parties, a fixed period of duration ; for then, it might very properly be contended, that the principal knew or was bound to know the precise time when the contract was dissolved, or. had legally ceased to exist. But, in this case, the mandate had, neither in law nor by the will of the parties, any determinate period of duration ; until the note was collected, the agency was in force. It only ceased to exist when the money was received by L. Millaudon. In other words, the mandate ceased to exist upon the happening of a fact, that of payment, which Millaudon was necessarily aware of, which it was his duty to bring home to our knowledge, but which he concealed from, or, at least, failed to communicate to us.

LABAUVE, J. This suit is based upon the following written promise of the defendant :

"Je m'engage par ce présent écrit à régler la réclamation de Mr. Laurent Millaudon, montant à la somme de $3,996 50, à la date du 7 Décembre, 1852, pour la réclamation du syndicat provisoire, en billets endorsés par mon fils Auguste, lesquels billets seront faits à un, deux et trois ans, avec les intérêts de 7 pour cent."

The defendant, in his answer, admitted the execution of this obligation, and alleged that the plaintiff was indebted to him in the sum of $7,310 12, composed of $2,605, the half of attorney's fees paid by him and his syndic, for the defence of suits in which plaintiff was jointly interested with him, and $4,695 12, principal and interest of a note owned by defendant, and which was paid by the makers to plaintiff for defendant, all of which he plead in compensation.

The plaintiff pleaded prescription against defendant's demands in compensation. The district court sustained the plea of prescription, and gave judgment against the defendant, in favor of plaintiff, for the amount claimed, and the defendant took this appeal.

The defendant failed to establish the first item of his demand, being for one-half of attorney's fees.

The only things remaining to be examined are relating to the note, said to have been collected by plaintiff for defendant, and the plea of prescription filed by plaintiff.

*E. C. Debreuil*, sworn, says : In looking over the books, he finds that the note of the tobacco warehouse, in favor of Alexander Lesseps, was paid to Mr. Millaudon ; the entry showing said payment reads as follows, in the books of F. de Lizardi & Co., on credit side of Millaudon's account :

MILLAUDON<br>
<i>v.</i><br>
LESSEPS.

September 30, 1843. By M. de Lizardi & Co., in liquidation for note of the tobacco warehouse company, in favor of Alex. Lesseps, protested ; but paid by Mr. Millaudon, as per judgment obtained...... $3,395 00

At 8 per cent. per annum, add interest eighteen days, to 30th September, 1842.............................................. 10 18

                                                          ─────────
                                                          $3,405 18

This witness further says, that he recollects the transaction well; knows that the tobacco warehouse owed Lesseps for bricks furnished by him, and for which they gave him their note, which note was given by Lesseps to Millaudon for collection ; and, from the entries in the books in court, he supposes it is the same note, and that it was paid.     *     *     *

Defendant introduced in evidence the entry in Millaudon's account current books, called for and produced by him, which reads as follows, to wit :

    Dr.                                                    Cr.

F. de Lizardi & Co. in account current, with interest to 30th September, 1842, with L. Millaudon.

1842. Sept. 12th. Note of tobacco warehouse of A. Lesseps, charged by agreement to this account............................ $3,395 00

Interest.... ........................................... 10 18

Offered also the following entry, same book, page 440 :

October 30, '43. Mr. L. Millaudon, to F. de Lizardi & Co., Cr.

1842. Sept. 30. To this sum charged in his account current of 30th Sept. 1842, as amount of note of tobacco warehouse company, to Alexander Lesseps, with interest................................. $3,395 00

Should be as follows :

Note due 4th June, 1840......................... $2,600 00

Interest from 4th June, 1840, to 12th Sept., 1842, 830 days, at 5 per cent......................... 299 71
                                                          ─────────
                                                          $2,899 71

Due F. de Lizardi & Co., cash, 12th Sept., 1843.............. $495 29

New Orleans, 9th December, 1843.

(Signed)                                  F. DE LIZARDI & Co.,
                                              in liquidation.

The above entry shows that it is an account rendered by F. de Lizardi & Co. to L. Millaudon, and the latter entered it in his own books.

Defendant also offered the entry in the journal of F. de Lizardi & Co., in liquidation, at page 120 :

Dec. '43. Laurent Millaudon, on account No. 2, to M. de Lizardi & Co., in account for this sum charged in his account current, 30th September, 1842, journal, p. 101, note of A. Lesseps.................... $3,395 00

Which should be note due 2d June, 1840, tobacco warehouse company to A. Lesseps............... $2,600 00

Which should be interest from 4th June, 1840, to 12th Sept. 1842, 820 days, 8 per cent. $299 71.... $2,899 71
                                                          ─────────
                                                          $495 29

From the testimony of *Debreuil,* and the entries in the books of plaintiff and of de Lizardi & Co., we are satisfied that the note due by the to-

32

bacco warehouse company was held by defendant and collected by plaintiff, by being placed to his credit in his account current with de Lizardi & Co. It appears that, in an account current of 30th September, 1842, the plaintiff had been credited for said note, with $3,395 instead of $2,600 and interest to that date; the error having been discovered, de Lizardi & Co. made an entry in their books showing and correcting this error, and charging Millaudon with the difference as a balance due, cash, 12th September, 1843, with $495 29. This entry or amount is dated New Orleans, 9th December, 1843, and signed by F. de Lizardi & Co. in liquidation. This rectifying amount was entered in Millaudon's books as of *October* 30, 1843; by this entry it is clear that the plaintiff acknowledged the error, and that he owed said balance to de Lizardi & Co., and also that he had received and had in his hands on that day, for defendant, as proceeds of the note due by the tobacco warehouse company, in principal and interest, the sum of $2,899 71; and that he had not accounted to the defendant for his agency. C. C. Art. 2974; 10 R. 481.

The plaintiff, having taken charge of the collection of the note in question, became a special agent of defendant in regard to it, and in correcting the error by this entry in his books he acted as agent; and perhaps his agency ceased here, say on the 30th October, 1843, according to the entry in his books; and prescription may have commenced to run from that day; the action that defendant had against plaintiff was a personal action which could be prescribed only by ten years. C. C. Art. 3508; *Cooper* v. *Harrison*, 12 A. 631; Troplong, Prescription, vol. 2, Art. 490. According to the written obligation sued upon, the defendant became indebted to the plaintiff, on the 7th December, 1852, for $3,996 50, with 7 per cent. interest per annum from that date. The plea in compensation has a retroactive effect to the time when the plaintiff and defendant became indebted to each other. C. C. Art. 2203. Now, suppose that prescription commenced running in favor of plaintiff from the 30th October, 1843, the ten years prescription was not acquired on the 7th December, 1852. The plea of prescription must be overruled, and the compensation allowed. C. C. Art. 2204; 10 R. 196.

The proceeds of the note were received by the plaintiff by being placed to his individual credit in his current account with de Lizardi & Co.; having employed them to his own use, he owes legal interest on the same, say from the 30th October, 1843, to the 7th December, 1852. C. C. Art. 2984.

The plaintiff was indebted to the defendant, on the 7th December, 1852, in principal and interest, in the sum of $4,219 40, exceeding, by $222 90, the amount claimed in the petition. The defendant has not prayed judgment for any excess or balance.

It is therefore ordered, adjudged and decreed that the judgment of the District court be annulled and reversed; that the plea of prescription to the demand in compensation be rejected; that the respective claims of the parties be declared compensated and extinguished to the sum of $3,996 50; that the defendant pay costs incurred prior to the 16th January, 1860, and all subsequent costs, and those of this appeal to be paid by plaintiff and appellee. C. P. Arts. 370, 371.