(118 So. 881)

No. 27698.

OILBELT MOTOR CO. v. GEORGE T. BISHOP, Inc.

Rehearing Denied Nov. 26, 1928.

Thigpen, Herold, Lee & Cousin, of Shreveport, for plaintiff.

Hunter, Morgan & Hunter, of Shreveport, for defendant.

O'NIELL, C. J. This is a suit for the price of goods alleged to have been sold and delivered by the plaintiff to the defendant. The

goods consisted of a lot of Dodge automobile parts and accessories, invoiced at $8,285.63. Both parties are dealers in automobiles and accessories. The plaintiff is a Texas corporation, domiciled and doing business at Ranger, in Eastland county, in that state, and, before the transaction in question, had the agency for the sale of Dodge automobiles in that territory, under an "associate dealer's contract" with the Central Motor Company, at Waco, Tex. The defendant is a Louisiana corporation, having its domicile and place of business·at Shreveport, and, at the time of the transaction in question, had the agency for the sale of Dodge automobiles in that territory, under a contract made directly with the manufacturer.

The defendant acknowledges receipt of the goods, of the value claimed, according to the invoice, but contends that they were not sold but merely shipped on consignment, to be sold for account of the plaintiff. The defendant contends also that some of the goods so shipped were obsolete parts, usable only on old model Dodge cars, and that some were what are called "outlaw" parts, not manufactured by the Dodge factory, and therefore not allowed to be sold by agents for the Dodge automobiles. As to these obsolete and so-called outlaw parts, defendant pleads that there was no obligation on its part to accept or pay for them. Defendant acknowledges having sold $3,121.31 worth of the goods at the invoice prices, but sets up, as a credit or offset, a bill for $2,699.71, for automobile parts and accessories sold to the plaintiff. The latter pleads that the defendant's claim for $2,699.71, being on an open account more than three years old, is barred by the prescription of three years, according to article 3538 of the Civil Code. The district judge overruled the plea of prescription, and gave judgment in favor of the plaintiff for the amount sued for, with legal interest from the date of shipment of the goods, but subject to the credit of $2,699.71 claimed by defendant, of date the 25th of November, 1922.

The defendant has appealed from the judgment; and the plaintiff, answering the appeal, prays that the plea of prescription be sustained and the judgment increased to the amount sued for. The defendant, as appellant, has also filed a plea of prescription in this court, contending that the goods shipped by the plaintiff were shipped on the 17th of August, 1921, three years and one day before this suit was filed, and therefore, that the suit, being on an open account, is barred by the statute of limitations, article 3538 of the Civil Code.

■ The defendant's plea of prescription is founded upon a clerical error made by the clerk of the district court, or his typist, in copying, in the transcript of appeal, the bill of lading for the goods shipped by the plaintiff to the defendant. The original bill of lading, which was brought up in response to the plea of prescription, bears date the 19th of August, 1921. The date is written at the beginning of the instrument, in figures with a pencil, thus, "8/19/21"; and the date is printed plainly, at the end of the instrument, in the date line of the stamp whereby the railroad agent accepted the shipment subject to the terms and conditions of the uniform bill of lading, etc., thus: "Received—Texas & Pacific Railway—Accepted subject to the terms and conditions of uniform bills of lading, etc., Aug. 19, 1921. [Signed] S. B. Tunnell, Agent." In the penciled figures, "8/19/21," at the top of the instrument, the figure "9" was made carelessly and looks something like the figure "7," but, on close inspection—or even ordinary inspection—it is certainly the figure "9." There is no doubt about that in the mind of any member of the court, and would be no doubt even if the date were not stamped plainly in the acceptance of the shipment, at the end of the bill of lading. The suit was filed on the 18th of August, three

years less one day after the goods were delivered to the carrier, consigned to the defendant. There was no stipulation as to the terms of payment. The price, therefore, could not have been due or demandable for a period of three years when the suit was filed and citation was served. The action, therefore, was not barred by prescription.

The plaintiff's plea of prescription also is not well founded. The defendant's claim of $2,699.71 for goods sold and delivered to the plaintiff was not barred by prescription for the simple reason that it was extinguished by compensation. Compensation takes place by the mere operation of law, as soon as two persons owe each other, and the debts are thereby extinguished to the extent of the smaller of them. Rev. Civ. Code, art. 2208. A claim which would otherwise be lost by prescription may be pleaded successfully in compensation or as an offset against a counterclaim of the creditor, provided the claim so pleaded was not barred by prescription when the counterclaim arose and extinguished it by effect of the law of compensation. Nichols v. Hanse and Hepp, 2 La. 385; Riddell v. Gormley, 4 La. Ann. 140. The plea in compensation has a retroactive effect, as of the date when plaintiff and defendant became indebted to each other; hence neither of the reciprocal claims is barred by prescription unless it was subject to the plea of prescription before the other claim arose. Millaudon v. Lesseps, 17 La. Ann. 246; Lewy v. Wilkinson, 135 La. 107, 64 So. 1003.

Aside from the plaintiff's plea of prescription, it is not disputed that the defendant is entitled to have credit for the $2,699.71 on the account sued on. In other respects the evidence is in favor of the plaintiff. The question as to whether the goods were sold outright or shipped on consignment for account of the plaintiff is a matter of dispute between the president of the one corporation and the president of the other; but the circumstances which brought about the transaction corroborate the testimony of the president of the Oilbelt Motor Company that the goods were not shipped on consignment, to be sold by the defendant for the plaintiff's account, but were sold outright by the plaintiff to the defendant. The plaintiff lost its agency for the sale of Dodge automobiles and was therefore compelled to dispose of its entire stock of parts and accessories, in this way: The defendant was overstocked by a large shipment of automobiles from the factory, and, finding it difficult to finance the situation, requested the plaintiff to take some of the cars. Accordingly, fifteen of them were diverted from the defendant's establishment, at Shreveport, to the plaintiff's establishment, at Ranger, Tex.; several carloads of the automobiles being diverted without being unloaded at Shreveport, and several more automobiles being driven over from Shreveport to Ranger. The plaintiff's buying of these automobiles from the defendant was a violation of the "associate dealer's contract" between the plaintiff and the Central Motor Company, at Waco, Tex. The consequence was that the Central Motor Company rescinded the associate dealer's contract. The Oilbelt Motor Company then contended that, under the terms of the contract, the Central Motor Company was obliged to take over all of the Dodge automobile parts and accessories which the Oilbelt Motor Company had on hand, and pay for them at the list prices. The value of such parts and accessories, which the Oilbelt Motor Company had on hand, at list prices, was about $22,000; and the Central Motor Company objected to buying them. The president of the George T. Bishop, Inc., being aware of the controversy between the Oilbelt Motor Company and the Central Motor Company, and being afraid that, if the president of the Oilbelt Motor Company should be too insistent, the reaction

might be a cancellation of the agency contract between the Dodge Bros. Automobile Company and the George T. Bishop, Inc., requested the president of the Oilbelt Motor Company not to insist upon the Central Motor Company's taking any more of the parts or accessories than the latter was willing to take, and to sell to the George T. Bishop, Inc., at the list prices, all such parts and accessories as the Central Motor Company was not willing to accept. The Oilbelt Motor Company preferred to sell all of the parts and accessories to the Central Motor Company because the latter was able and obliged to pay cash for them; whereas the George T. Bishop, Inc., had not the ready cash. The president of the Oilbelt Motor Company finally consented to sell to the George T. Bishop, Inc., all such parts and accessories as the Central Motor Company would not accept. Accordingly, about $14,000 worth of the parts and accessories was sold to the Central Motor Company, and the entire remainder, being $8,285.63 worth, was shipped to and accepted by the defendant. Included in the shipment was a small proportion—about $300 worth—of the so-called outlaw parts, which had been rejected by the Central Motor Company. We infer from the testimony that those parts were such as the manufacturer of the Dodge automobiles did not manufacture but bought from other manufacturers. The manufacturer of the Dodge cars objected to the sales agents buying such parts elsewhere than from the manufacturer of the cars; but the objection was not rigidly enforced, especially in cases of emergency; and it was perhaps not at all extraordinary that an accumulation of $300 worth of such parts should be found in a stock valued at $22,000. Be that as it may, the defendant was quite willing to accept that small proportion of outlaw parts, for the reason which we have stated. As to the obsolete parts, it is very doubtful that there were any such

parts included in the shipment. There may have been a small proportion of them, for they were as necessary, in a complete stock of automobile parts and accessories, for the repair of old model cars, as the up-to-date parts were for the repair of later models. The evidence leaves no doubt that the defendant was willing to accept a small proportion of obsolete parts, as well as of the so-called outlaw parts.

The judgment is affirmed.