190 So.2d 500 (1966)
Melton SHARP et ux.
v.
ST. TAMMANY PARISH HOSPITAL et al.
No. 6722.
Court of Appeal of Louisiana, First Circuit.
July 8, 1966.
*501 Robert L. Kleinpeter, Baton Rouge, for appellants.
Charles M. Hughes, of Talley, Anthony, Hughes & Knight, Bogalusa, for appellees.
Before LOTTINGER, LANDRY, REID, BAILES and LEAR, JJ.
LEAR, Judge.
This is a husband and wife suit wherein it is alleged that the wife suffered personal injuries and the community suffered monetary loss as a result thereof.
A detailed recitation of the occurrence itself is unnecessary except as it relates to the severity and nature of the wife's injuries, inasmuch as the following events have occurred to delineate the issue between the parties:
1. This matter was tried a quo by a jury, which awarded plaintiff wife the sum of $10,000.00 and the husband, as head and master of the community, the sum of $5,000.00.[1]
2. The defendant does not assign any error to the pleadings, the impanelling of the jury, the conduct of the trial or the instructions received by the jury from the Trial Judge. Nor does defendant complain that awards were made.
3. The defendant does assign as error the excessiveness of the awards.
The two questions presented us then, from defendant-appellant's standpoint, are:
1. Should this Court review and possibly disturb the awards of the jury?
2. If so, what is proper recompense for a person injured to the extent that the plaintiff has been injured in this case and what present and future expenses have been incurred by the community as a direct result of such injury?
The plaintiffs have enabled us to answer the first question by filing an answer to defendant's appeal in which they pray for an increase in the awards. Again, they have no brief for any other or further objection. By such answer, they, as well as defendant, have requested that this Court answer the first question in the affirmative
*502 In order to proceed to our duty, then, it becomes imperative that we review all of the facts and circumstances without confining the inquiry to whether there has been an abuse of discretion of the trial authority.
Mrs. Melton Sharp, a lady of the age of twenty-eight years, lived with her husband and two children in St. Tammany Parish. Unfortunately, she suffered from a mechanical derangement of her bladder which prevented its voiding properly.
She had had a gall bladder operation with appendectomy and a hysterectomy previously, but because the mis-alignment of her bladder was causing or aggravating a cystitis condition, Dr. Simpson decided to correct this by surgery.[2]
During her convalescence from this operation, an employee of St. Tammany Hospital irrigated the patient's bladder with tincture of Zephiran, which, suffice it to say, is capable of irritating human and animal tissues. The manufacturer recommends an immediate washing with "free" use of soap if it is spilled on the skin. Its impact upon visceral tissue may be imagined if not defined.
This unfortunate incident occurred on May 23, 1963. The evidence preponderates that the plaintiff wife suffered immediate and severe pain and despite the fact that within the hour an irrigation with sterile water was done and narcotics administered, this agony persisted for approximately twenty-four hours.
Her hospital stay was prolonged three days because of this incident, but she was allowed to go home on May 27, 1963.
Dr. Simpson testified that he saw Mrs. Sharp the latter part of May and the first of June, that she was still experiencing an undue amount of pain and discomfort and that she was agitated to an extent that he felt she had an acute anxiety reaction, for which he gave her injections.
About June 22, 1963 plaintiff wife consulted with Dr. Upton Giles of Covington. A great deal of Dr. Giles' practice is devoted to urology and the Trial Judge qualified him as an expert in that field. Feeling that a cystoscopic examination and urine culture was necessary for proper diagnosis, Dr. Giles sent Mrs. Sharp back into the hospital on June 24, 1963 to carry out these procedures.[3]
His cystoscopic examination revealed to him the presence of an "acute hemotocystis" and the urine culture showed the presence of a common bacteria.
Although the doctor does not favor us with a definition of an acute hemotocystis, he stated that he could not differentiate between it and a burn. He concluded that the injection of the chemical formed a media which was environmentally conducive to the growth of a bacteria and that the bacteria grew in "a bladder that was already hurt, which will always be hurt."
Dr. Giles also became acquainted with Mrs. Sharp's complaints of nervousness, hot flashes, headaches, etc. He stated that chronic recurrent bladder infections tend to depress the patient and cause nervousness and its related ills. Further, he also agreed that the hysterectomy undergone by this person would have induced menopause with identical symptoms. He stated that Mrs. Sharp "has been on estrogen[4] the whole time", but unfortunately he did not explain whether "the whole time" encompassed the period before the bladder operation or not.
*503 Dr. James A. Long, a clinical pyschologist, testified that he has seen Mrs. Sharp on four occasions dating from July 3, 1963 to May 7, 1965. Although he found that Mrs. Sharp "had undergone some breakdown in psychological defenses" and had in large degree a feeling of pain or anxiety bordering on hysteria, he does not positively attribute such reaction to the chemical burn suffered by the plaintiff. In fact, he stated
"As far as I know she had a psychological problem from the time that she was about two and a half." He further admitted very freely that the long history of bladder trouble and the hysterectomy "might be expected to contribute" to plaintiff's psychological problems.
Dr. Arthur J. Silverman, testifying for defendant, stated that he conducted a complete examination of the urinary tract on December 28, 1964. His findings were that the bladder was normal in size and elasticity, that it emptied adequately and that there was no evidence of scarring or infection.
The plaintiffs both testified. It is not necessary to review their testimony in detail, but it will suffice to say that each painted a picture of a woman who does not enjoy good health and whose periods of depression, discomfort and general lassitude have increased since the operation and burn. The frequency of her night rising has also increased significantly.
However, this lay testimony certainly cannot assign the cause of this decrease in general health to the traumatic experience as distinguished from the effect of a "bladder which was already hurt".
Therefore, we are presented with a classic example of the aggravation of a pre-existing condition by trauma. It is now our duty to determine, as well as may be determined by human agency working from the written word, the nature, extent and duration of this aggravation and then assign a monetary value to our findings and conclusions.
There can be no doubt in our minds that the initial trauma was a severely painful one, but that the intense pain and discomfort was dispelled within a day or two. We have no reason to doubt but that the residual irritation persisted longer than the twenty-five day period that elapsed from the time of the trauma and the finding of the acute hemotocystis found by Dr. Giles on his initial examination.
However, this traumatic irritation had disappeared, without scarring, sometime before her examination by Dr. Silverman on December 28, 1964. It is impossible to state when the gradual alleviation of the traumatic difficulty actually terminated, because there still existed the pre-existing cystitis[5] for which defendant can not, in good conscience, be cast in damages.
Mental pain and suffering and humiliation are items of compensatory damages under our law. American Steel Building Co. v. Brenzer, La.App., 158 So.2d 623, and there can be no doubt that plaintiff wife here was subjected to both by this occurrence. Here again, however, it is impossible to apply a yardstick to measure the extent of these items inherent in her condition or attributable to the burn and its results.
Since the law prescribes no formula to guide us in our evaluation of damages and since this tribunal is now vested with the "much discretion" accorded a trier of fact, we have concluded that the plaintiff wife will be fully compensated for all results of the trauma, per se, including the increased psychological anxiety shown, by an award to her of Four Thousand ($4,000.00) Dollars.
We think the recovery allowable to the community is easier of determination. There is no doubt that the intensive medical treatment and supervision received by the *504 wife during the time lapse between the trauma and her examination by Dr. Silverman was due almost entirely to the pain and anxiety engendered by this burn. Therefore, we think complete justice will be done to the parties by awarding the husband all expenses proved between May 23, 1963 and the trial of this matter. After the testimony of Dr. Silverman, there is no evidence in the record that any future treatment will be necessary for anything other than the chronic cystitis, which, of course, was the pre-existing condition not attributable to any tort-feasor.
From our study of the record we feel that the damages proved to the date of trial are as follows:

1. Drug bills $ 578.70
2. Hospital bills 1070.35
3. Dr. Upton Giles 1001.00
4. Desporte Clinic 144.00
5. Dr. Charles Cobb 35.00
6. Dr. J. C. Minge, Jr. 30.00
7. Dr. Allan Long[6] 50.00
8. Travel expenses[7] 360.00

Therefore total the damages to the community at $3,269.81 and order judgment entered accordingly.
Amended and as amended,
Affirmed.
NOTES
[1] Although St. Tammany Hospital was named in the petition as a co-defendant, judgment was rendered solely against Argonaut Insurance Company, who is the only defendant before this Court.
[2] The operating doctor described this as a not unusual result of childbirth, and testified that plaintiff had suffered with this for six to eight years. This correlates with the age of her children. The operation was performed and was "uneventful".
[3] Ordinarily, this would have been done in the doctor's office, under local anesthesia, but due to Mrs. Sharp's complaints, the doctor ordered it done in the hospital under general anesthesia.
[4] A well-known palliative for discomforts of menopause.
[5] It is the Court's understanding that this may be brought about from infection from the kidneys or from the urethra, neither area having experienced trauma.
[6] There are two bills submitted by Dr. Long in the record. The first, dated July 15, 1963, is for "psychological evaluation and three therapeutic sessions". The amount of that bill is $50.00. In January of 1965, at a time when this case was being prepared for trial, Dr. Long submitted another bill, "for evaluation" for $55.00.

The Court feels that his July 1963 bill could properly be classified as therapy and hence compensable. However the January 1965 bill appears to us to be merely an examination preparatory to his testimony. This being the case, the Court considers this not being compensable damages, but merely in the nature of an examination leading to testimony.
[7] The Sharp home is about fifteen miles from Covington, about twenty miles from Bogalusa and about sixty miles from New Orleans. Mr. Sharp testified that he had totaled his mileage in transporting his wife to and from the doctors and the hospital. This total came to 3600 miles and the Court feels that he should be compensated for them at the rate of 10¢ per mile. His testimony was not controverted in any matter on this point. The defense counsel objected to evidence on this particular cost item on the ground that the petition did not allege this item specifically. On the trial of the case and after objection, the Court allowed an instanta verbal amendment to encompass this evidence. Under Article 861 of the Louisiana Code of Civil Procedure items of Special Damage shall be specifically pleaded. However, LSA-C.C.P. 1154 provides: "If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby * * *." Inasmuch as petitioner had alleged "medical expenses, doctors bills and drug bills" in the sum of $10,000.00 without defendant's having sought an itemization thereof, this Court feels that these traveling expenses are so intimately a part of the medical expenses that the ends of justice were served by the Court's allowance of the oral amendment on the trial of this matter.