263 So.2d 436 (1972)
Billy Joe JOHNSON
v.
BEST MANUFACTURING CO., Inc., et al.
No. 8868.
Court of Appeal of Louisiana, First Circuit.
May 29, 1972.
*437 Walton J. Barnes, Baton Rouge, for appellant.
William G. Tabb, III, New Orleans (Robert Kerrigan, New Orleans), for defendantappellee Best.
A. Clay Pierce, Baton Rouge, for plaintiff-appellee.
Before LANDRY, BLANCHE and TUCKER, JJ.
TUCKER, Judge.
This is a suit for delictual damage allegedly sustained by plaintiff, Billy Joe Johnson, on January 13, 1970, in an altercation between him and his foreman, Anthony Corsentino, whom he sued personally. Charging that the altercation took place during the course and scope of his employment, plaintiff also brought suit against his employer of one month, Best Manufacturing Company, Inc., on whose premises the altercation took place, and Insurance Company of North America, the insurer of Continental Boiler and Sheet Iron Works of St. Louis, of which defendant Best Manufacturing Company is a subsidiary. Plaintiff sued the above named defendants in solido for FOUR THOUSAND, FIVE HUNDRED AND NO/100 ($4,500.00) DOLLARS, for assault and battery, both with and without a deadly weapon, which allegedly resulted in humiliation, anxiety, fear for his life, and considerable physical and mental pain, suffering, and inconvenience; and for unjustifiable loss of employment. Defendants answered the suit, denying liability on various grounds. In addition defendant Anthony Corsentino filed a peremptory exception of no right of action, charging that the proper plaintiff in this action should have been the Trustee in Bankruptcy inasmuch as plaintiff had filed suit in bankruptcy and listed the instant action on his schedule of assets. This exception was referred to the merits by the trial judge and overruled on the trial. The trial judge awarded plaintiff the sum of $200.00 against Anthony Corsentino personally, rejected his demands against Best Co., Inc., and the Insurance Company of North America and decreed that the court costs be divided between Johnson and Corsentino.
From the judgment in the trial court the defendant Corsentino has appealed against plaintiff Johnson, only, specifying error by the trial court on the following grounds:
(1) In referring his peremptory exception of no right of action to the merits and then in overruling it on the basis of "the majority opinion of other jurisdictions;" *438 (2) In declaring that defendant Corsentino, a man one hundred pounds lighter and a head shorter than his assailant, used excessive force by brandishing a knife, which appellant claims is a fact in dispute, after the court had already acknowledged that the evidence established that plaintiff Johnson was the aggressor, and finally;
(3) In making an award of "damages" after declaring that there were no injuries or damages from the altercation between the parties, which Corsentino argues, in the absence of pleading and proof, constitutes exemplary or punitive damages, which is not favored under Louisiana law.
Plaintiff-appellee answered the appeal, charging that the Two Hundred and no/100 ($200.00) Dollars awarded him was wholly inadequate and that he was aggrieved, also, by the assessment against him of one-half of the court costs of the proceedings.
An appellate brief was filed in these proceedings on behalf of Best Manufacturing Company, Inc., and its insurer Insurance Company of North America, but no appeal has been taken by either of the other two parties to this action against either of the aforementioned companies; therefore, their brief will not be considered.
It is true that the trial judge erred in declaring that "The Court has examined the jurisprudence and while there is no Louisiana case in point, it appears that the majority opinion of other jurisdictions is to the effect that an assault and battery cause of action is not an inheritable right and as such the party itself (sic) is the proper party to file suit and maintain the action," and thus overruling appellant's peremptory exception on that basis. By the clear language of Article 2315 of the Civil Code "A right to recover damages under the provisions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not." Since 1960 when this provision was added to C.C. Art. 2315, there has been no doubt that "the right to recover all other damages caused by an offense or quasi offense," is an "inheritable" right. See also Code of Civil Procedure Articles 426, 428, and J. Wilton Jones Co. v. Liberty Mutual Insurance Co., 248 So.2d 878 (La.App. 4th cir. 1971), all of which further established the heritability of delictual actions. Even though there may be merit to the argument that the heritability of delictual actions has nothing to do with the rights of creditors, it must be noted, also, that "... as a general premise, it is well-settled that a creditor may seize the rights and interests (except for strictly personal rights) of a litigant in a pending lawsuit, even though these rights are not declared at the time demand is made." Yiannopoulos, Louisiana Civil Law of Property, sec. 78. See also Collector of Revenue v. Tenneco Oil Co., 206 So.2d 302 (La.App. 4th cir. 1968) and LSA-R.S. 13:3865-13:3868 which permit the seizure of legal actions by creditors. In view of all the foregoing, this court holds that under the law of Louisiana the present action is such an action, which is contemplated by 11 U.S.C.A. sec. 110(a) (5) as a property right, and is transferable to the trustee in bankruptcy in the event of the plaintiff's filing a petition in bankruptcy. The provisions in question are as follows:
"(a) The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located.
(5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred *439 or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered: Provided, That rights of action ex delicto for libel, slander, injuries to the person of the bankrupt or of a relative, whether or not resulting in death, seduction, and criminal conversation shall not vest in the trustee unless by the law of the State such rights of action are subject to attachment, execution, garnishment, sequestration, or other judicial process:"
Despite our ruling that the instant action is a property right which vested in the trustee in bankruptcy appointed to represent the plaintiff's estate, we are obliged to recognize that it is discretionary with the Referee in Bankruptcy as to whether or not he shall give the Trustee the mandate to prosecute any pending litigation or permit the plaintiff to continue it, advising the Trustee at the time of judgment as to its outcome. See Paradise v. Vogtlandische Maschinen-Fabrik, 99 F. 2d 53 (C.C.A. 3rd cir. 1938) and In re Southern Land Title Corp., 301 F.Supp. 379 (E.D.La.1968) (a case of a reorganization trustee who has the same rights as a trustee in an ordinary bankruptcy proceeding). The plaintiff himself testified in the instant suit that the Referee in Bankruptcy asked Mr. Brown to advise him of the outcome of the suit here filed. The action of the trial judge in overruling appellant's peremptory motion of no right of action will be upheld, therefore, for the reasons recited here.
Although there is much conflict of testimony as to the exact sequence of events which precipitated the controversy involved herein, the record suggests that on the morning of January 13, 1970, plaintiff Johnson, a manual laborer, still a probationary employee since he had been employed by Best for less than thirty days, reported to work about 6:45 A.M., and was performing certain preliminary duties in the industrial yard, when he was informed by his foreman, Anthony Corsentino, an employee of Best for many years, that he should prepare to go into "the field." Plaintiff-appellee inquired from a fellowworker about the pay rate for working "in the field," and somehow this was relayed to the foreman. The testimony in reference to the immediately ensuing events is conflicting; with plaintiff's witnesses testifying that Corsentino came out of his office talking in a very loud voice and telling plaintiff that he would get paid, while Corsentino himself testifies that he simply told plaintiff "don't worry about that." At any rate profanity quickly followed, and there seems to have been a brief, but very heated exchange between Johnson and Corsentino. Each party alleges that the other started the altercation with his abusive language. Plaintiff and two of his witnesses who were fellow-workers, Lawrence Williams, his brother, and Freddie Cage, testified that Corsentino, after the heated exchange walked away toward a table and came back with one hand behind his back holding a knife, which he then brandished in front of plaintiff, swiping across and cutting through his jacket, although he did not cut plaintiff. Appellant Corsentino testified as follows: "He used language a sailor wouldn't use. I walked back to Mr. Riha, told Riha what was going on, he give me the o. k. to come back out and I fired him and when I fired him that's when he told me to go get his m.f. money and he can handle me on the outside. We went outside and scuffled and broke up and that was it." Upon further cross-examination Mr. Corsentino admitted to having had a knife on him. He testified that he had a knife, stitcher, and a roller on him, in his back pocket, from 7:00 A.M. until 3:30 P. M. The knife in question was described as being from eight to ten inches long with an extremely sharp blade, designed to cut rubber. When asked if he took his knife out of his pocket, Corsentino testified, "No sir. The only time I took that knife out of my pocket was when I seen him coming at me and then it went on the barrel or table and that's when he went to commencing *440 to taking his shirt off so I had to do something. A man two hundred and fifty pounds on a man a hundred and sixty pounds, five foot ten, you have got to do something, you have got to protect yourself some kind of way if I couldn't do nothing but just run around and tire him out." Corsentino testified also that he had never had any trouble with his men in the past ten years of working with them; that he always spoke in the same tone of voice; that he took off his tools before going outside to deal with plaintiff; and that he did not know how plaintiff's shirt was torn, if it were. Plaintiff's offer to introduce the cut or torn shirt into evidence was denied by the trial judge inasmuch as it had not been mentioned at the pre-trial conference. All witnesses are agreed that plaintiff was unarmed.
It seems to be the consensus of all witnesses that after the knife episode, whatever its exact nature, Corsentino put the knife down on a table and plaintiff turned around and walked off. Plaintiff testified that Corsentino then hit him in the back with his fist, but Corsentino denies it.
Although it is difficult to ascertain from the record exactly who "fired the first shot", it is clear that matters escalated very quickly into open hostilities. The trial judge evaluated the evidence as follows:
"Now, there is of course, an obvious discrepancy in the testimony of the witnesses, but it appears that the overwhelming weight of the evidence shows that Mr. Corsentino, who was Johnson's foreman, became engaged in a heated conversation with Johnson over a proposed job in the field and that when the plaintiff cursed Corsentino the latter obtained a knife and swung at Johnson cutting his shirt. It further appears that there was other action between the two parties of no consequence. Subsequently the supervisor of Best Manufacturing Company terminated Johnson's employment.
Now, it is the opinion of this Court that Johnson was guilty of provocation which conduct was by the use of his obscene language directed to Corsentino. And certainly it would be understandable if Corsentino had used physical force in responding to this obscene language, however, the use of a deadly weapon such as a knife is not sanctioned under our jurisprudence, except in those instances when the party using the weapon is apprehensive for his personal safety or that he be subjected to great physical harm. Such is not the case here. While the Court is of the opinion that there was some provocation on the part of the plaintiff, Billy Joe Johnson, in the use of obsecene language directed to Mr. Corsentino, nontheless Corsentino was clearly wrong in responding with the use of a deadly weapon under the circumstances. Fortunately there were no injuries and the damages were insignificant."
This court is unable to find sufficient grounds for a determination of manifest error by the trial judge in his evaluation of the testimony of the witnesses who appeared before him, as reflected in his statement given above. There is conflicting testimony as to the initial aggressor, and there is conflicting testimony as to Corsentino's handling of his knife, but support for the trial judge's finding that Corsentino responded improperly to plaintiff's provocation can be found in the fact that even Corsentino himself admitted that he had his knife in his pocket and did remove it and did approach plaintiff with it.
Plaintiff alleged as part of his injuries loss of wages and inability to find another job for some time after being fired from Best, even though he had never been fired from any job before. Riha, the manager of Best, testified that Johnson's performance had been unsatisfactory, that he had discussed this with the foreman Corsentino about ten days before the day of the altercation, and that they were planning to release him. This court agrees with the trial court, therefore, in his finding *441 that plaintiff is not entitled to an award for loss of wages.
The trial court stated that there was no finding of injuries or damages; yet awarded plaintiff $200.00, which appellant attacks as punitive or exemplary and unjustifiable under the law of Louisiana. Plaintiff admitted freely on the witness stand and in the interrogatories propounded to him that he sustained no physical injuries in the fracas at issue, but he did complain that his feelings were hurt in that he had been talked to in such a manner by his foreman before all of his fellow-workers. The cases are legion in this state which express the opinion that the trial judge has considerable discretion in the assessment of damages in delictual and quasi-delictual matters. Although compensatory damages for mental pain, suffering, and humiliation have been awarded by courts of this state in such cases as Sharp v. St. Tammany Parish Hospital, 190 So.2d 500 (La.App. 1st cir. 1966); American Steel Building Co. v. Brezner, 158 So.2d 623 (La.App. 3d cir. 1963), the trial judge seemingly based his award on "the assault and battery involved." This court can find no manifest error in the trial judge's using his substantial discretion in the premises to award the minimal sum which he considered adequate of $200.00 to a man who must have been placed in great fear of his life by the approach of another angry man holding a lethal weapon such as the eight to ten inch blade knife admittedly wielded by defendant Corsentino.
The trial judge stated that "in view of the circumstances involved," he would pro-rate the costs of court. This court interprets this statement as indicating that the trial judge felt that the plaintiff as a provocator in the altercation should bear some responsibility for the results. This court sees no ground for disagreement with this holding.
The costs of this appeal will be assessed against defendant-appellant.
Judgment affirmed.