322 So.2d 822 (1975)
McELROY METAL MILL, INC.
v.
V. Linton HUGHES d/b/a Hughes Engineering & Construction Company.
No. 12742.
Court of Appeal of Louisiana, Second Circuit.
November 6, 1975.
*824 Parkerson & Guerriero by Joe D. Guerriero, Monroe, for defendant-appellant.
Hayes, Harkey, Smith & Cascio, by Louis D. Smith, Monroe, for plaintiff-appellee.
Before PRICE, DENNIS and MARVIN, JJ.
MARVIN, Judge.
Defendant-appellant Hughes appeals from a money judgment awarded plaintiff-appellee McElroy in a suit on an open account, allowing against the account certain credits of $1,057.74, but rejecting Hughes' reconventional demand against McElroy. McElroy answered the appeal, seeking (a) to delete the credits allowed below, and (b) to correct the time from which the lower court allowed legal interest.
In the latter part of 1971, Hughes contracted with one McFerren to construct for $35,000.00, a metal building for a skating rink in Bossier City similar to a building Hughes was constructing for another person in Shreveport. Hughes purchased roofing and paneling for both buildings from McElroy. Purchases of material for the two buildings were made on invoices beginning December 10, 1971, through June 20, 1972.
During the course of construction of the Bossier City building, McFerren, the owner, made complaints to Hughes about workmanship and material, including complaints about exposed raw metal edges on interior paneling called mini-rib paneling, and about mis-matched shades of color in the roofing. The exposed edges of the paneling were corrected by the installation by Hughes' employees of rib covers furnished by McElroy. A similar problem existed on the Shreveport building and was corrected in the same manner. Hughes attempted to satisfy McFerren's complaints about the roofing by removing and realigning the individual sheets, placing the sheets of similar shading on the same row. In June, 1972, Hughes was claiming and "invoiced" McElroy for, $1,638.00 in labor and travel expenses incurred in installing the rib covers on both buildings and changing the roofing on the Bossier City building. Eventually, McElroy allowed Hughes a credit for $480.00 for extra labor in installing rib covers on the Bossier City building. The rib covers were furnished by McElroy without charge to Hughes. The last credit given Hughes by McElroy was on July 17, 1973.
The skating rink opened in January or February of 1972. McFerren complained to Hughes about the placement of a wall of the building; about rain leaking through the roof of the building; and about defects and damage concerning the floor of the building. Law suits were verbally threatened and one or more meetings were held in the spring of 1972 between the principals, or their representatives. Hughes and McFerren partially settled their differences by Hughes allowing McFerren ten cents a square foot discount on *825 the roof complaint ($2,625.00), and twenty cents a square foot on the mini-rib edge complaint ($1,100.00), for a total deduction of $3,725.00 from the balance of $7,175.00 on the building contract which McFerren had refused to pay.
On January 28, 1974, McElroy brought suit, claiming a balance owed for materials of $4,534.95.
Hughes answered the suit, claiming credits and discounts of some $2,000.00 against the account sued on, and reconvened for $3,725.00, itemizing this amount as $1,100.00 in costs incurred in installing rib covers at twenty cents per square foot, and as $2,625.00 at ten cents per square foot for reconstructing the roof, all because of the alleged defective material. McElroy pleaded prescription and otherwise denied the reconventional demand.
The lower court awarded judgment on the open account, rejected the reconventional demand, but allowed Hughes $697.74 credit for discounts included on written purchase orders from Hughes to McElroy, and credit or compensation of $360.00 for the costs of installing rib covers on exposed edges of paneling in the Shreveport building.
On appeal, Hughes contends the lower court manifestly erred in not allowing as a reconventional demand or as further compensation, the amount Hughes allowed McFerren in the compromise settlement.[1] Hughes also contends here that since he appealed only on the above issue, the issues of the credits allowed by the trial court are not before this court.[2]

THE PURCHASE ORDER DISCOUNTS
Hughes submitted written purchase orders to McElroy using unit and total prices from which he had deducted ten percent, which, according to his testimony, was the discount verbally agreed to by McElroy's representative. McElroy denied any such agreement. The trial court correctly found, even absent such a verbal agreement, the purchase order was a written offer for specific quantities of merchandise at a specific price which was accepted by McElroy when the merchandise was delivered to Hughes without McElroy making a counter-offer. The award of the discount is not and should not be deemed to be allowed in compensation, but as a factual dispute between the seller and the buyer as to the terms of the contract between them, properly resolved in favor of the buyer.

COMPENSATION
There was a dispute between Hughes and McElroy as to the amount owed for materials sold because of the allowance vel non, of the amount claimed by Hughes as a discount. There was also a dispute as to the amount, if any, for which McElroy might be obligated to correct at least the exposed edges of the interior panels. La.Civil Code Articles 2207-2216 set forth the substantive requirements of compensation. In Cox v. Heroman & Co., 298 So.2d 848, 854 (La.1974), the Supreme Court recognized, for the purposes of the substantive requirements for compensation, that debts might be equally due and demandable, *826 ". . . at least as of the time of the judgment." It is also established that a claim or debt which is otherwise barred by prescription may be successfully pleaded in compensation, provided the claim or debt was not barred by prescription at the time the claim arose against which compensation is pleaded. Oilbelt Motor Co. v. George T. Bishop, Inc., 167 La. 183, 118 So. 881 (1928), and Georgia-Pacific v. Miller, 94 So.2d 531 (La.App. 1st Cir. 1957). Hughes' claim against McElroy existed almost simultaneously with and had not prescribed when his debt to McElroy arose.
The factual issue as to the roofing was resolved below in favor of McElroy. There was evidence supporting the trial court's conclusions and we find no manifest error in this regard. The evidence shows that the roofing sheets were not first grade material which were painted for exterior use. The underside of these sheets was only coated with a sealer to inhibit rust and discoloration. This side of the sheets was not intended to be exposed towards the elements. Hughes and McFerren decided to use this type sheet with the coated side exposed because it was cheaper in price than the first grade material coated and painted for exterior exposure. The roofing sheets used on the Bossier City building were not warranted by McElroy as to uniformity of coloring or shading.
The lower court found exposed edges on the interior panels to result from their being "improperly machined" by McElroy. The court noted Hughes' testimony to be "highly subjective (and generalized), particularly with respect to the travel credit he seeks." The court below found that "some credit" was due and allowed $360.00 for labor costs in installing rib covers on the Shreveport building, but disallowed the amount claimed for travel. We find no manifest error in this regard.

THE CLAIM FOR $3,725.00 ALLOWED McFERREN BY HUGHES
Counsel for Hughes contends that recovery should be allowed either (a) under the principle of subrogation as was employed in Cox v. Heroman & Co., 298 So.2d 848 (La.1974) or (b) under the principle of negotiorium gestio as was employed in Standard Motor Car Co. v. State Farm, 97 So.2d 435 (La.App. 1st Cir. 1957). These principles are inapposite here because the trial court concluded (and the evidence supports the conclusions) that there were "substantial complaints" about the location of a wall of the building, flooring defects, and overall workmanship, besides the complaints about the interior panels. Under whatever legal theory a claim may be allowed, the facts supporting the claim must be proved by a preponderance of the evidence by the party asserting the claim, whether as a plaintiff or as a defendant. The appellant's pleadings were construed most liberally by the trial court and the denial of appellant's claims is not founded on the inadequacy of principles upon which recovery may be allowed, but upon appellant's failure to satisfy the burden of proof under any principle or theory.

LEGAL INTEREST FROM TIME OF DEMAND?
The lower court awarded interest only from date of judicial demand. On May 1, 1972, defendant-appellant Hughes ordered and took delivery of the final shipment of goods invoiced June 23, 1972. La.C.C. Art. 1938 provides interest on all debts shall run from the date on which the account becomes due unless otherwise stipulated. Provisions contained in the invoice of June 23 relative to payment of the account form no part of the contract of sale because the sale was perfected on May 1, both parties having agreed to the object and price. See La.C.C. Arts. 2439, 2456. In absence of such provisions, we hold the account to have become due upon delivery *827 of the goods. See La.C.C. Art. 2550. Plaintiff-appellee has prayed that legal interest be awarded from July 1, 1972. Since the debt was clearly due on or before that date, we amend the judgment of the trial court to award interest from July 1, 1972.
For the reasons assigned, we affirm the lower court, except to allow legal interest on the uncompensated portion of the judgment from July 1, 1972.
Appellant and appellee shall each pay one-half costs of the appeal.
NOTES
[1] The lower court characterized the pleadings on this issue "technically imprecise" but considered the issue as raising the defense of compensation because this issue was "abundantly clear" in the pleadings, the pre-trial conference and during the trial. The adverse party was given "fair notice" of the contentions of Hughes. The lower court was correct and its ruling was in accord with Townsend v. Cleve Heyl Chevrolet, 318 So.2d 618 (La.App.2d Cir., 1975), and Loyacano v. Continental Insurance Company cited therein. It is also noted that testimony on this issue was introduced without objection.
[2] Counsel is incorrect. When the appellee has answered the appeal, he is not limited to the issues raised by the appellant. La.C.C.P. Art. 2133, Sharp v. St. Tammany Parish Hospital, 190 So.2d 500 (La.App. 1st Cir. 1966).