FRED W. JONES, Jr., Judge.
The trial judge awarded a husband and wife $5,224.86 for damages sustained as a result of defendant’s firing two shots in the direction of the wife while she was in the community automobile. The only issue presented on appeal is one of quantum, with defendant-appellant asserting that the judgment is excessive and plaintiffs, in their answer to the appeal, contending that it is inadequate.
Finding that the trial court’s award for damages does not constitute a clear abuse of its broad discretion, we affirm.
Although the occurrence of the assault with a dangerous weapon is not at issue on this appeal, the circumstances surrounding the incident have a direct bearing upon what was apparently the most substantial element of damages — the mental distress suffered by the plaintiff wife.
At about six o’clock P.M. on Friday, June 5, 1981, Mrs. Tina Badgett, 21 years of age, drove her Toyota automobile out of Cous-hatta on Highway 71 en route to her rural residence. Immediately in front of Mrs. Badgett and proceeding in the same direction was a blue pickup truck driven by Bruce Keith, also 21 years old. Neither of the parties knew the other. Both of the vehicles turned off of Highway 71 onto the Hickory Grove Road. Since Keith was driving at the speed limit, Mrs. Badgett did not attempt to pass the truck, but followed it at a distance of some six car lengths.
As they proceeded down the Hickory Grove Road, Mrs. Badgett noticed that Keith started driving in an erratic manner, slowing down and then suddenly speeding up. Then, according to Mrs. Badgett, Keith abruptly stopped his truck in the middle of the highway, jumped out of the vehicle with a revolver in his hand, walked toward the stationary Badgett automobile and fired a shot at the front of that car. Mrs. Bad-gett immediately placed her vehicle in reverse and began backing up, preparatory to turning around and fleeing in the opposite direction. As she stopped her car near a ditch, at an angle in the road, Keith fired another shot at the Toyota.
*338 Mrs. Badgett was finally able to turn her automobile around and go back in the direction from which she had come. However, looking in her rearview mirror, she observed that Keith had apparently also turned his truck around and was “tailgating” the Toyota. After traveling about half a mile, Mrs. Badgett lost control of her car and ran into a ditch. Noticing several dwellings in the vicinity, Mrs. Badgett went to one to seek assistance and report the incident. Keith drove on by.
At the trial on the merits, held some four months after the assault, Keith gave this explanation for his bizarre conduct: “I was tired of people following me. Especially that particular car.” He conceded, however, that he did not know who was in the Toyota. Obviously, he should have been able rather easily to discern that he was being followed by a lone female.
Keith admitted having fired his revolver twice, but stated that he pointed it “down toward the ground.” A spent bullet was retrieved from the left rear tire of the Badgett automobile the day after the incident.
Mrs. Sammy Bass, to whose house Mrs. Badgett went for assistance, testified that “there was a pounding on the door, and I answered it and there was a girl, crying, very upset, and trying to tell me that someone had ... shot at her ... she couldn’t control her crying.”
When Larry Badgett, the victim’s husband, arrived at the Bass residence he found his wife “was broken down, crying, screaming to me, you know, about somebody was after her, somebody was shooting at her, you know, that she was scared.”
Trooper Webb, who investigated the incident the following day, found Mrs. Badgett “highly agitated, upset, crying, almost incoherent at times, just nervous. She was on the edge of ... not panic, but on the edge of hysteria, in my opinion.”
Mrs. Badgett was examined by her family physician, Dr. Wyche Coleman, on the day following the incident. Dr. Coleman testified that he found no objective signs of trauma but it was evident to him that she was “quite anxious.” As a consequence, he prescribed medication for her nerves. Although he subsequently treated Mrs. Bad-gett for other complaints, none of these involved the incident of June 5.
Mrs. Badgett, five feet tall and weighing 113 pounds, testified that the incident in question had completely changed her life, explaining:
“I stay nervous and upset ... I cannot stay by myself ... and if I do, if I stay there at night ... I have to keep a gun beside my bed and I never go to sleep. I have to make sure that the doors are locked. Usually ... my husband doesn’t leave me by myself ... I still have nightmares about it now, even though it’s been three or four months. In the day time, even when nothing happens, I remember about it, and I guess you call it flashbacks that I see him ... I see him shooting at me, just for no reason.”
Mrs. Badgett also stated that, after the shooting incident, she became extremely upset when Keith came into the Coushatta bank where she worked as a teller. Two of her co-workers corroborated this, testifying that when Keith came into the bank on one of his regular visits to cash a salary check, Mrs. Badgett became visibly disturbed, fled her teller’s window regardless of the number of customers standing in line, went into another room and started weeping.
Mrs. Badgett’s testimony that prior to June 5,1981 she experienced no problems of this nature was unrefuted.
In addition to the victim’s mental distress occasioned by the shooting incident, there was evidence that property damage to the Toyota (when Mrs. Badgett ran into the ditch) amounted to $650.44.
Further, Mr. Badgett testified that, as a consequence of this assault upon his wife, he missed three days work, losing $309.60 in wages.
Defendant-appellant asserts in his brief that the trial court awarded Mrs. Bad-gett $4,000 for mental anguish and $240 for lost wages, and awarded Mr. Badgett *339 $309.60 in lost wages and $650.44 for property damage to the Toyota. Plaintiffs-ap-pellees also state in their brief that the trial judge awarded Mrs. Badgett $4,000 damages for mental suffering. As we have previously noted, the judgment of the trial court simply awarded damages to Mr. and Mrs. Badgett in the sum of $5,224.86. Nowhere in the record is there a statement by the trial judge breaking this lump sum down into specific amounts for various elements of damages. Be that as it may, the record amply supports the award to Mr. Badgett for his special damages. Assuming that the balance of the judgment — $4,240— is for general damages to Mrs. Badgett for her mental distress[1], the question is whether the trial judge’s award constitutes a clear abuse of his broad discretion. La.Civil Code Art. 1934(3); Cheatham v. City of New Orleans, 378 So.2d 369 (La.1980); Beck v. Stevens, 373 So.2d 498 (La.1979). Based upon our review of the record and the evidence which is summarized above, we do not find such an abuse of discretion. Therefore, the judgment is affirmed, at appellant’s cost.

. Since there was no medical evidence of physical injury to Mrs. Badgett resulting from the shooting incident, we assume that this element was not included in the damage award by the trial judge. Be that as it may, under our law recovery may be had for mental anguish, pain and distress even though unaccompanied by physical injury. Johnson v. Best Manufacturing Co., Inc., 263 So.2d 436 (La.App. 1st Cir. 1972); Collins v. Lefort, 210 So.2d 895 (La.App. 1st Cir. 1968).